462

Kristen Elisabeth BAIRD, a minor by her next friend and parent, Nancy BAIRD, Plaintiffs–Appellants,

v.

Susan Elizabeth ROSE; Inez Cohen; Fairfax County School Board, and its Chairman, Defendants–Appellees,

and

Kristen J. Amundson, Defendant.

No. 98–2064.

United States Court of Appeals, Fourth Circuit.

Argued May 5, 1999.

Decided Sept. 22, 1999.

**464**

**BRIEF:** Thomas J. Cawley, Hunton & Williams, McLean, Virginia, for Appellees.

Before ERVIN,* WILKINS, and KING, Circuit Judges.

Reversed in part, affirmed in part, and remanded for further proceedings by published opinion. Judge WILKINS wrote the opinion, in which Judge ERVIN and Judge KING joined.

## OPINION

WILKINS, Circuit Judge:

Plaintiff Nancy Baird brought this action on behalf of her minor daughter Kristen Elisabeth Baird (Baird)[1] against Baird's former teacher Susan Elizabeth Rose, Principal Inez Cohen, and the Fairfax County School Board (collectively, "Appellees") alleging claims for discrimination under Title II of the Americans with Disabilities Act (ADA), see 42 U.S.C.A. § 12132 (West 1995), and intentional infliction of emotional distress under Virginia law. The district court granted Appellees' motion to dismiss for failure to state a claim upon which relief could be granted. See Fed.R.Civ.P. 12(b)(6). We reverse in part and affirm in part.

### I.

Viewing Baird's complaint in the light most favorable to her, as we must, see *Mylan Lab., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993), the complaint alleged the following facts. In the spring of 1996, while she was in the seventh grade at Rocky Run Middle School in Fairfax, Virginia, Baird auditioned for and was accepted to participate in show choir for the 1996–1997 school year. Show choir was a song and dance class for which grades were given; students learned song and dance routines and then performed them,

**ARGUED:** Bernard Joseph DiMuro, Dimuro, Ginsberg & Lieberman, P.C., Alexandria, Virginia, for Appellants. John Francis Cafferky, Hunton & Williams, McLean, Virginia, for Appellees. **ON**

* Judge Ervin participated in the consideration of this case but died prior to the time the decision was filed. The decision is filed by a quorum of the panel pursuant to 28 U.S.C. § 46(d).

1. For ease of reference we refer to this action as having been litigated by Baird.

sometimes in competition with other schools. Rose was the instructor for show choir.

During auditions for show choir, Rose expressed concern to Baird's father that Baird's frequent absences posed a potential problem for her participation in show choir. Baird's father informed Rose that although Baird suffered from recurrent sinus infections that caused her to miss school frequently, she would have no difficulty keeping up with show choir.

During the following school year, Baird continued to miss school regularly due to her ongoing medical problems. In January 1997, however, she auditioned for a lead role in the Rocky Run Middle School spring play, a musical. Rose and two drama teachers had joint responsibility for assigning roles. Rose advised Baird that she would not be considered for a lead role due to her frequent absences. Following the initial audition, which involved no singing but only dramatic readings, Baird was asked to return to audition for an alto role although she is a soprano. On January 30, 1997, Baird learned that she had been chosen for only a minor role.

On January 31, 1997, Baird was absent from school due to a sinus infection, and her mother telephoned Rose to confirm that Baird had a bona fide medical excuse. The following day, Baird attempted suicide by taking an overdose of ibuprofen. The attempt was triggered by Baird's belief that Rose had arranged for her to fail in her efforts to secure a lead role in the spring play by convincing the drama teachers to ask her to audition for an alto role Rose knew Baird could not perform rather than a soprano role for which she was more qualified.

On February 7, 1997, Baird was diagnosed as suffering from severe depression and was placed on a treatment plan that included medication and counseling. On February 12, 1997, Baird's mother informed a counselor at the school of Baird's diagnosis. On that day and the following day, Baird was absent from school.

Baird's mother gave her permission for the counselor to inform Baird's teachers of the diagnosis, and on February 13, 1997 Rose learned that Baird had been diagnosed with severe depression. The next day, when Baird returned to school, Rose announced to the entire class that Baird would not be permitted to participate in the next show choir performance, which was scheduled for February 25, 1997, explaining to Baird that this "would be best." J.A. 8 (internal quotation marks omitted). Rose thereafter assigned Baird's part to another student and forbade Baird to participate in rehearsal.

Baird's mother subsequently confronted Rose and asked that Baird be permitted to participate as usual. Rose stated that Baird did not know the dance routines well enough due to her absences. Baird's mother told Rose that her daughter in fact did know the routines, that she was capable of performing them, and that it was important to Bairds mental health and recovery that she be allowed to continue her participation in show choir. Baird's mother asked Rose to give Baird an opportunity to demonstrate that she was able to perform the dance routines. Rose refused, stating that she felt it would be best for Baird, given her depression, not to participate in show choir and that individuals who suffer from depression could not be counted on to meet their responsibilities.

On February 16 and 17, 1997, Baird's family doctor and psychologist submitted letters to Principal Cohen stating that Baird was fit to perform in show choir and that it could be detrimental to her mental health to be denied the opportunity to do so. On February 18, 1997, Baird's mother contacted Principal Cohen and requested, among other things, that Rose give Baird the opportunity to demonstrate her knowledge of the dance routines despite her absences and that Rose permit Baird to participate in the upcoming performance. Baird's mother stressed to Principal Cohen her concern that Rose might take

further action that would cause Baird additional distress.

Instead of granting these requests, Principal Cohen informed Rose that she must either prohibit from participation in the performance all students who had been absent in accordance with Rose's written absence policy—which previously had not been enforced—or permit all students to perform. Later that day, Rose announced to the show choir class, in Baird's presence, that Rose was being forced to adhere to her previously published strict attendance policy although she did not wish to do so. Rose then pronounced that not only was Baird prohibited from participating in two of the three numbers in the upcoming performance, but three other students who had "legitimate" absences would be excluded from one number as well. Rose then asked the class members if they understood why she was being forced to adhere to the strict attendance policy, and other students commented that someone was taking advantage of the lax enforcement of the attendance policy and that someone did not know the routines and would slow down the performance of the group.

Humiliated, Baird left the class and telephoned her mother. Upon her mother's arrival at the school, Baird was exhibiting signs of severe emotional distress, crying uncontrollably and shaking. Baird's mother removed her from school for the rest of that day. After leaving school, Baird was unable to stop crying and a tranquilizer was prescribed by her doctor.

Baird's mother requested that Principal Cohen permit another adult to observe show choir class until Baird could be reassured that Rose would not embarrass her in front of her classmates again. When Baird's mother received no response, she took time off from work to observe the class herself. The following day Baird's grandmother attempted to attend show choir class but was prevented from doing

2. We refer to the Motion for Judgment as the complaint throughout the remainder of this

so. Principal Cohen then contacted Baird's mother and informed her that she was barred from the school unless she received advance permission to be there. Rose, with Principal Cohen's approval, required Baird to sit during rehearsals through February 25, 1997. Baird also was not permitted to fully participate in the February 25 performance.

Due to the stress of this situation, Baird began to suffer severe sleeplessness, inability to sleep alone, decreased appetite, exhaustion, difficulty concentrating, fear of humiliation by other students, fear of humiliation by Rose, and a dramatic increase in the occurrence of physical illnesses. In addition, the quality of Baird's schoolwork began to suffer as a result of her exhaustion, difficulty concentrating, and increased physical illnesses. Her grades fell dramatically. Baird's mother took a leave of absence from work in order to ensure that Baird did not attempt suicide again.

Baird thereafter filed a Motion for Judgment[2] against Appellees in state court, claiming a violation of the ADA and intentional infliction of emotional distress. Appellees removed the action to federal court, and the district court granted their motion to dismiss. *See* Fed.R.Civ.P. 12(b)(6). The district court concluded that the allegations of Baird's complaint demonstrated that she was not discriminated against on the basis of her depression. The court ruled as follows:

> [I]t [is] conclusive that the ultimate action of denying [Baird] ... participation in the school play was not based solely, if at all, on [her] alleged disability (viz., depression), but was supported by a valid and uniformly enforced policy of absenteeism.... Absenteeism was not only the articulated basis for defendants' initial action—before [Baird's] diagnosis with depression, but ... was also the

opinion.

basis for excluding three other students from various parts of the show. J.A. 144–45.

## II.

■ This court reviews a dismissal of a claim by the district court under Rule 12(b)(6) de novo. *See Mylan Lab., Inc.,* 7 F.3d at 1134. On appeal from an order granting a Rule 12(b)(6) motion to dismiss, this court accepts as true the facts as alleged in the complaint, views them in the light most favorable to the plaintiff, and recognizes that dismissal is inappropriate "unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim." *Id.* at 1134 & n. 4 (internal quotation marks omitted); *see Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) (explaining that dismissal for failure to state a claim is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations").

Pursuant to Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity." 42 U.S.C.A. § 12132. This court has stated that to establish a violation of the ADA, a plaintiff must show (1) that he has a disability; (2) that he is otherwise qualified for the bene-

fit in question; and (3) that he was excluded from the benefit due to discrimination solely on the basis of the disability. *See, e.g., Doe v. University of Md. Med. Sys. Corp.,* 50 F.3d 1261, 1265 (4th Cir.1995). There is no dispute here that Baird has alleged adequately that she suffered from a disability—depression[3]—or that she was otherwise qualified[4] to participate in show choir classes or performances. The ruling of the district court and the appeal to this court focus on the third element—whether Baird was excluded from show choir "by reason of" discrimination on the basis of her depression. 42 U.S.C.A. § 12132.

## A.

■ The reasoning of the district court was based upon a misunderstanding of Baird's factual allegations.[5] The play for which Baird auditioned and show choir were separate activities, and it is discrimination with respect to show choir, not the play, that Baird claims. Under the facts alleged by Baird, her exclusion from show choir did not occur until after Rose had been informed of Baird's depression, and Rose expressly relied, at least in part, on Baird's depression in determining that she could not participate in show choir. Baird frequently had been absent prior to Rose's notification of Baird's disability, but Rose had never excluded her from show choir before. Further, Rose's absenteeism policy had never been enforced until after Rose made the decision to exclude Baird

3. Defendants do not contend that the depression alleged by Baird is not a disability. *See Mustafa v. Clark County Sch. Dist.,* 157 F.3d 1169, 1174–75 (9th Cir.1998) (per curiam) (explaining that depression may qualify as a disability depending on whether it is chronic and on its severity); 42 U.S.C.A. 12102(2) (West 1995) (defining the term "disability" to mean, "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment"). And, we agree that Baird's allegations concerning her depression are adequate to state a claim as to this element.

4. The term "qualified individual with a disability" is defined by the ADA as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C.A. § 12111(8) (West 1995).

5. We are uncertain whether the district court confused show choir with the school play, failed to comprehend the timing of the events alleged by Baird, or both.

and was not enforced uniformly against all students who had been absent until after Principal Cohen informed Rose that she must apply the policy uniformly or not at all. Thus, we conclude that Baird's factual assertions are adequate to allege that she was excluded from show choir because of her depression.[6]

### B.

■ Having concluded that Baird's complaint sufficiently alleges that she was discriminated against because of her depression, we turn to the question of what standard of causation is adequate to support a claim under the ADA. Appellees argue that Baird must allege that she was discriminated against "solely" on the basis of her disability and that her complaint fails to do so. Appellees rely on our decision in *Doe*, which contains language in dicta that a plaintiff must demonstrate that the discrimination was based "solely" on a disability. *Doe*, 50 F.3d at 1265. We conclude, however, that the language of *Doe* is not conclusive of the question of whether Baird adequately alleges a viola-

tion of the ADA if she claims that her disability was a motivating cause—as opposed to the sole cause—of discrimination.

■ In *Doe*, which involved both an ADA claim and a claim under § 504 of the Rehabilitation Act of 1973 (Rehabilitation Act), as amended, *see* 29 U.S.C.A. § 794(a) (West 1999), we set forth a single statement of the elements of both claims, acknowledging the general principle that "[b]ecause the language of the two statutes is substantially the same, we apply the same analysis to both." *Doe*, 50 F.3d at 1264 n. 9. The ADA and Rehabilitation Act generally are construed to impose the same requirements due to the similarity of the language of the two acts. *See Rogers v. Department of Health, Envtl. Control*, 174 F.3d 431, 433–34 (4th Cir.1999) (noting that it is appropriate to refer to constructions of the Rehabilitation Act in determining the meaning of an ADA provision). Congress has directed courts "to construe the ADA to grant at least as much protection as provided by the regulations implementing the Rehabilitation Act." *Bragdon v. Abbott*, 524 U.S. 624, 118 S.Ct. 2196,

---

**6.** Approaching the issue from a slightly different perspective, Appellees assert that Baird's participation in show choir was denied on a nondiscriminatory basis—her absenteeism and her lack of knowledge of the routines—not on her disability. Appellees explain that it is undisputed that other students who had been absent were excluded along with Baird and that the application of this neutral rule means that Baird was not discriminated against. In support of this proposition, Appellees point to authority holding that the application of a neutral rule that does not distinguish between the disabled and the non-disabled does not violate the ADA. *See, e.g., Sandison v. Michigan High Sch. Athletic Ass'n*, 64 F.3d 1026, 1032, 1036 (6th Cir. 1995) (holding that application of a neutral rule excluding students over age 18 from participation in high school sports did not violate the ADA when applied to disabled 19–year-old high school students, even though the students were still in high school at age 19 because of their disabilities). Undoubtedly, the application of a neutral rule that applies to disabled and nondisabled individuals alike cannot be considered discrimination on the basis of disability. And, if Baird was exclud-

ed from participation because of her absences or lack of familiarity with the routines to perform them, Appellees did not violate the ADA. However, the allegations of Baird's complaint permit a conclusion that the application of the neutral absenteeism policy, which had never been applied until after Rose attempted to exclude Baird on the basis of her depression, was a pretext for discrimination and that the true reason for Baird's exclusion was her disability. The post hoc application of a neutral rule does not excuse discrimination when the neutral rule would not have been enforced but for the discrimination. And, it is inappropriate in addressing the appropriateness of a dismissal under Rule 12(b)(6) to make a determination concerning the weight of the evidence that ultimately may be presented in support of these various positions. *See* 5A Charles Allen Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1356 (2d ed.1990) (explaining that "[t]he purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or the merits of the case").

2202, 141 L.Ed.2d 540 (1998); *see* 42 U.S.C.A. § 12201(a) (West 1995). And, Congress has instructed that interpretation of Title II of the ADA and § 504 of the Rehabilitation Act be coordinated "to 'prevent[ ] imposition of inconsistent or conflicting standards for the same requirements' under the two statutes." *Rogers,* 174 F.3d at 433 (alteration in original) (quoting 42 U.S.C.A. § 12117(b) (West 1995)); *see also* 42 U.S.C.A. §§ 12134(b), 12201(a) (West 1995). However, the ADA and the Rehabilitation Act are not exactly the same in all respects, and thus, while the two should be construed to impose the same requirements when possible, there are situations in which differences between the statutory provisions dictate different interpretations. *Cf. Woodman v. Runyon,* 132 F.3d 1330, 1343 (10th Cir.1997) (emphasizing that a difference in statutory language between the Rehabilitation Act and the ADA dictates the imposition of a different burden on various classes of employers).

Despite the overall similarity of § 12132 of Title II of the ADA and § 504 of the Rehabilitation Act, the language of these two statutory provisions regarding the causative link between discrimination and adverse action is significantly dissimilar. Section 504 of the Rehabilitation Act states that "[n]o otherwise qualified individual with a disability ... shall, *solely by reason of* her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination" by specified entities. 29 U.S.C.A. § 794(a) (emphasis added). In contrast, the pertinent language of the ADA prohibits discrimination against an individual "*by rea-son of* such disability." 42 U.S.C.A. § 12132 (emphasis added); *see also* 42 U.S.C.A. § 12112(a) (West 1995) (prohibiting discrimination "because of" a disability); 42 U.S.C.A. § 12203(a) (West 1995) (prohibiting discrimination "against any individual because such individual has opposed any act or practice made unlawful by this chapter").

In *McNely v. Ocala Star–Banner Corp.,* 99 F.3d 1068, 1073–77 (11th Cir.1996), the Eleventh Circuit addressed at length whether the ADA should be read to require that discrimination be the sole basis for the adverse employment action. After considering the statutory language, the legislative history, and Supreme Court precedent extant at the enactment of the ADA, the court ruled that the ADA did not impose a "solely because of" standard of causation. *See id.* We find this analysis to be well reasoned and adopt the conclusion that the ADA does not impose a "solely by reason of" standard of causation.[7]

Our decision in *Doe* does not require a different result. The statement of the elements contained in *Doe,* including the reference to causation "solely" on the basis of a disability in the third element, was adopted from an opinion addressing a claim under the Rehabilitation Act, *Gates v. Rowland,* 39 F.3d 1439, 1445 (9th Cir. 1994). *Doe,* 50 F.3d at 1265. *Doe,* however, dealt with the question of whether an HIV-positive doctor was a qualified individual. We thus were not called upon to decide the causation standard applicable under the ADA; indeed, beyond the brief reference contained in the statement of the elements, the opinion contains no discussion of the causation requirement.[8] *See*

---

7. The only two contrary decisions of which we are aware are *Sandison v. Michigan High School Athletic Ass'n,* 64 F.3d 1026, 1036 (6th Cir.1995), and *Despears v. Milwaukee County,* 63 F.3d 635, 636 (7th Cir.1995). Neither decision offers reasoning in support of the conclusion that the "solely because of" standard applies.

8. Other panels of this circuit have quoted the elements of an ADA claim as set forth in *Doe,*

but none has addressed specifically the causation requirement and none has held that a plaintiff fails to prove or allege an ADA claim when the disability is a but-for cause of the discrimination but some other cause also factored into the defendant's decision. *See Halperin v. Abacus Tech. Corp.,* 128 F.3d 191, 197 (4th Cir.1997); *Shafer v. Preston Mem. Hosp. Corp.,* 107 F.3d 274, 276 (4th Cir.1997); *Williams v. Channel Master Satellite Sys., Inc.,* 101 F.3d 346, 348 (4th Cir.1996) (per cu-

*McNely,* 99 F.3d at 1076–77 (rejecting the argument that *Doe* "held that 'because. of' in the ADA context means 'solely because of' " (emphasis omitted)).

■■■ Having rejected a "solely because of" standard, the question becomes what causation standard applies. For the reasons set forth below, we conclude that the causation standards applicable in Title VII actions are applicable to violations of § 12132. The remedies available for a violation of § 12132 are set forth in 42 U.S.C.A. § 12133 (West 1995), which in turn provides that "[t]he remedies, procedures, and rights set forth in section 794a of Title 29 shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability in violation of section 12132." *See* 42 U.S.C.A. § 12133. Section 794a specifically makes the remedies available under Title VII applicable to actions under the ADA. *See* 29 U.S.C.A. § 794a(a)(1) (West 1999) (incorporating "[t]he remedies, procedures, and rights set forth in ... 42 U.S.C.2000e–5(f) through (k)"). Generally, relief is not afforded under § 2000e–5(g) if the plaintiff was subjected to an adverse employment action "for any reason other than discrimination." 42 U.S.C.A. § 2000e–5(g)(2)(A) (West 1994). Title VII recognizes as an unlawful employment practice discrimination that "was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C.A. § 2000e–2(m) (West 1994); *see* 42 U.S.C.A. § 2000e–5(g)(2)(B) (West 1994). Thus, if a plaintiff claiming discrimination under § 12132 demonstrates that his or her disability played a motivating role in the employment decision, the plaintiff is entitled

to relief. *See Foster v. Arthur Andersen, LLP,* 168 F.3d 1029, 1033–34 (7th Cir.1999) (indicating that to recover under the ADA, an employee must demonstrate that impermissible discrimination was a motivating factor); *Katz v. City Metal Co.,* 87 F.3d 26, 33 (1st Cir.1996) (same); *Buchanan v. City of San Antonio,* 85 F.3d 196, 200 (5th Cir.1996) (same); *Pedigo v. P.A.M. Transp., Inc.,* 60 F.3d 1300, 1301 (8th Cir. 1995) (same); *see also Doane v. City of Omaha,* 115 F.3d 624, 629 (8th Cir.1997) (recognizing that 42 U.S.C.A. §§ 2000e–2(m) & 2000e–5(g)(2)(B) apply in actions brought pursuant to the ADA). Damages may not be awarded for such a violation, however, if the defendant "would have taken the same action in the absence of the impermissible motivating factor." 42 U.S.C.A. § 2000e–5(g)(2)(B); *Doane,* 115 F.3d at 629; *Buchanan,* 85 F.3d at 200; *Pedigo,* 60 F.3d at 1301. In such circumstances, relief is limited to declaratory and injunctive relief, costs, and attorney's fees. *See* 42 U.S.C.A. § 2000e–5(g)(2)(B); *Doane,* 115 F.3d at 629; *Buchanan,* 85 F.3d at 200; *Pedigo,* 60 F.3d at 1301; *cf. McNely,* 99 F.3d at 1076 ("hold[ing] that the ADA imposes liability whenever the prohibited motivation makes the difference in the employer's decisions, *i.e.,* when it is a 'but-for' cause"). Applying this legal standard, Baird's complaint contains adequate factual allegations to state a claim under the ADA—to allege that discrimination on the basis of her disability was a motivating factor in her exclusion from show choir—even though her complaint may be read to contain allegations that her absenteeism (or resulting perceived lack of ability to perform the routines) also played a role in that decision.[9]

---

riam); *see also Sellers v. School Bd.,* 141 F.3d 524, 528 (4th Cir.) (stating that *Doe* held that "solely because of" standard applied to claim under § 504 of the Rehabilitation Act), *cert. denied,* —— U.S. ——, 119 S.Ct. 168, 142 L.Ed.2d 137 (1998); *Martinson v. Kinney Shoe Corp.,* 104 F.3d 683, 686 (4th Cir.1997) (citing *Doe* as setting forth elements of ADA claim and employing a "because of" standard for causation).

**9.** Appellees also contend that the accommodation requested by Baird was not required because Appellees did not have to provide Baird with an opportunity to show that she knew the dance routines. Appellees maintain that attendance is an essential requirement for the benefit of participating in show choir and that they need not waive this requirement and provide an alternative means of assessing whether Baird was able to perform the rou-

## C.

 Finally, Appellees contend that Title II of the ADA does not recognize a cause of action for discrimination by private individuals, only public entities, so the district court properly dismissed Baird's ADA cause of action against Rose and Cohen in their individual capacities even if that claim should not be dismissed in its entirety. *See* 42 U.S.C.A. § 12132 (prohibiting denial of benefits of or discrimination by a "public entity"). Baird concedes this point of law, but maintains that the ADA does recognize a retaliation claim against individuals. *See* 42 U.S.C.A. § 12203(a) (stating that "[n]o *person* shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter" (emphasis added)); *see also* 28 C.F.R. § 35.134(b) (1998) (stating that "[n]o *private or public* entity shall coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised ... any right granted or protected by the Act" (emphasis added)). Although they acknowledge that § 12203(a) may be read to prohibit

retaliation against individuals for engaging in protected conduct, Appellees argue that this fact does not answer the pivotal question of whether Congress has provided individuals who have been retaliated against for engaging in conduct protected by the ADA with a private cause of action against the persons who are responsible for the retaliation in their individual capacities. [10] Appellees assert that Congress did not supply such a cause of action and instead chose to limit the remedies available to those who have suffered retaliation for conduct protected by the ADA to those remedies available under Title VII. *See* 42 U.S.C.A. § 2000e–5 (West 1994). We agree.

The remedies available for a violation of the antiretaliation provision of the ADA in the employment context are set forth in 42 U.S.C.A. § 12117 (West 1995). *See* 42 U.S.C.A. § 12203(c).[11] Section 12117 specifically makes the remedies available under Title VII applicable to actions under the ADA. *See* 42 U.S.C.A. § 12117(a) (providing that "[t]he powers, remedies, and procedures set forth in section[ ] ... 2000e–5 ... of this title shall

tines. *See Tyndall v. National Educ. Ctrs., Inc. of Cal.,* 31 F.3d 209, 213 (4th Cir.1994) (holding that "[a]n employee who cannot meet the attendance requirements of the job at issue cannot be considered a 'qualified' individual protected by the ADA"). This argument, however, is founded on the false premise that the opportunity to prove she knew the routines was an accommodation to her depression. As alleged by Baird, the request that she be permitted to show that she knew the routines was an "accommodation" to her absences due to illness, not an "accommodation" to her depression. Thus, the issue of "accommodation" is irrelevant to Baird's ADA claim.

**10.** Appellees also contend that Baird failed to present evidence sufficient to raise a genuine issue of material fact with respect to her retaliation claim against Rose and Cohen because, viewed in the light most favorable to Baird, the forecasted evidence tended to demonstrate that the retaliation against Baird was a result of protected conduct engaged in by her mother, not Baird herself. We reject this argument. It is clear that Baird's mother was acting on Baird's behalf in complaining of

what she perceived to be conduct by school officials violating the ADA. *See EEOC v. Ohio Edison Co.,* 7 F.3d 541, 544 (6th Cir.1993) (concluding that Title VII recognizes a cause of action by an employee against employer for retaliation based upon conduct protected by Title VII by a relative of the employee); *see also Holt v. JTM Indus., Inc.,* 89 F.3d 1224, 1227 & n. 2 (5th Cir.1996) (rejecting argument that, generally speaking, the ADEA provides a remedy for retaliation based on conduct of a third person, but distinguishing a situation in which the person engaged in the protected conduct is acting on behalf of the victim of the retaliation).

**11.** Section 12203(c) provides in pertinent part:

The remedies and procedures available under sections 12117, 12133, and 12188 of this title shall be available to aggrieved persons for violations of subsections (a) and (b) of this section, with respect to subchapter I, subchapter II and subchapter III of this chapter.

42 U.S.C.A. § 12203(c).

be the powers, remedies, and procedures this subchapter provides to ... any person alleging discrimination on the basis of disability"). The enforcement provision of Title VII permits actions against an "employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C.A. § 2000e–5(b). Title VII and the ADA define an "employer" in pertinent part as "a person engaged in an industry affecting commerce who has fifteen or more employees." 42 U.S.C.A. § 2000e(b) (West 1994); *see* 42 U.S.C.A. § 12111(5)(A) (West 1995). We have expressly held that Title VII does not provide a remedy against individual defendants who do not qualify as "employers." *See Lissau v. Southern Food Serv., Inc.,* 159 F.3d 177, 180–81 (4th Cir.1998) (holding that supervisors cannot be held liable in their individual capacity under Title VII because they do not fit within the definition of an employer). Because Title VII does not authorize a remedy against individuals for violation of its provisions, and because Congress has made the remedies available in Title VII applicable to ADA actions, the ADA does not permit an action against individual defendants for retaliation for conduct protected by the ADA. *See Stern v. California State Archives,* 982 F.Supp. 690, 692–94 (E.D.Cal.1997) (holding that individuals who do not qualify as "employers" under Title VII cannot be held liable under the ADA); *cf. Hiler v. Brown,* 177 F.3d 542, 545–46 (6th Cir.1999) (explaining that because it incorporates the remedies available under Title VII, the Rehabilitation Act does not permit actions against persons in their individual capacities). Accordingly, we hold that the district court properly dismissed Baird's action against Rose and Cohen in their individual capacities.

### III.

Baird also asserts that the district court erred in dismissing her claim of intentional infliction of emotional distress.

Under Virginia law, intentional infliction of emotional distress requires that (1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous and intolerable in that it offends generally accepted standards of decency and morality; (3) the wrongdoer's conduct caused the emotional distress; and (4) the emotional distress was severe. *See Womack v. Eldridge,* 215 Va. 338, 210 S.E.2d 145, 148 (1974). There is no dispute that Baird adequately pled the first, third, and fourth elements of a cause of action for intentional infliction of emotional distress. The second element, that the conduct be outrageous, "is aimed at limiting frivolous suits and avoiding litigation in situations where only bad manners and mere hurt feelings are involved." *Ruth v. Fletcher,* 237 Va. 366, 377 S.E.2d 412, 413 (1989) (internal quotation marks omitted). Thus, " '[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Russo v. White,* 241 Va. 23, 400 S.E.2d 160, 162 (1991) (quoting *Restatement (Second) of Torts* § 46, cmt. d (1965)). Baird contends that Appellees' alleged conduct was sufficiently outrageous to survive a motion to dismiss under Rule 12(b)(6) because Rose was a school official who was abusing her position and because Rose had reason to know that Baird was particularly susceptible. *See Restatement (Second) of Torts* § 46, cmts. e, f (1965) (recognizing that "[t]he extreme and outrageous character of the conduct may arise from an abuse by the actor of a position ... which gives him actual ... authority over the other" and that "conduct may become heartless, flagrant, and outrageous when the actor proceeds in the face of ... knowledge" of special susceptibility). Baird's complaint alleges, *inter alia,* that Rose—in her capacity as Baird's teacher and during a class to which Baird was assigned—intentionally attempted to humiliate Baird, a child, knowing that she was suffering from clinical depression. We cannot say, as a

matter of law, that the allegations in Baird's complaint do not allege facts so outrageous as to exceed the bounds of decent society. Therefore, we reverse the decision of the district court dismissing Baird's claim for intentional infliction of emotional distress.

## IV.

We hold that Baird's allegations state a claim of illegal discrimination under the ADA and that the district court erred in granting a dismissal of this claim pursuant to Rule 12(b)(6) with respect to the Fairfax County School Board and to Rose and Cohen in their official capacities. However, the district court correctly dismissed Baird's ADA retaliation claim against Rose and Cohen in their individual capacities. Finally, we conclude that the district court improperly dismissed Baird's claim of intentional infliction of emotional distress.

*REVERSED IN PART; AFFIRMED IN PART; AND REMANDED FOR FURTHER PROCEEDINGS*