**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ELIZABETH CRAWFORD,
<u>Plaintiff-Appellant,</u>

v.

UNION CARBIDE CORPORATION,

No. 98-2448

<u>Defendant-Appellee,</u>

and

AETNA U. S. HEALTHCARE,
<u>Party in Interest.</u>

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
John T. Copenhaver, Jr., District Judge.
(CA-96-281-2)

Argued: October 26, 1999

Decided: December 14, 1999

Before MURNAGHAN, WILKINS, and TRAXLER, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Daniel Mark Press, CHUNG & PRESS, P.C., McLean,
Virginia, for Appellant. Victoria Jean Sopranik, JACKSON &
KELLY, Lexington, Kentucky, for Appellee. **ON BRIEF:** Frederick
S. Mittelman, Arlington, Virginia, for Appellant. Roger A. Wolfe,

Erin Magee Condaras, JACKSON & KELLY, P.L.L.C., Charleston, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Elizabeth Crawford appeals an order of the district court granting summary judgment in favor of Union Carbide Corporation (Union Carbide) on her claims of discrimination brought pursuant to Title I of the Americans with Disabilities Act (ADA), see 42 U.S.C.A. §§ 12111-12117 (West 1995), and § 504 of the Rehabilitation Act of 1973, as amended, see 29 U.S.C.A. § 794 (West 1999).[1] Because we conclude that the district court correctly determined that Crawford is not entitled to relief, we affirm.

I.

Crawford began working for Union Carbide at its facility in the Kanawha Valley of West Virginia in 1980. In the early 1980s, Crawford assumed the position of environmental laboratory technician. She developed skin allergies in 1983, and as a result could no longer work in an environment in which she would be directly exposed to chemicals. Union Carbide accommodated Crawford by transferring her to a senior engineering information technician position, the particular responsibilities of which the company tailored for Crawford. As a senior engineering information technician, Crawford spent most of her time working on material safety data sheets (MSDSs). Her other

_____

[1] For ease of reference, and because the two statutes generally are construed to impose the same requirements, see Baird v. Rose, No. 98-2064, 1999 WL 739413, at *4 (4th Cir. Sept. 22, 1999), we refer to the ADA and Rehabilitation Act collectively as "the ADA."

2

responsibilities included managing the chemical data sheets system and assigning fire and stability ratings for Union Carbide chemicals.

In 1986, Crawford developed asthma. There is no indication in the record that either her allergies or her asthma interfered with her job performance or that she received any unsatisfactory job performance evaluations.

At some point in late 1993 or very early 1994, Union Carbide decided to alter the way in which the MSDSs were developed. Rather than have employees at different Union Carbide facilities work on discrete sections of an MSDS for a single chemical, the company created an MSDS/Label Skill Center at its Bound Brook, New Jersey site. At the new Skill Center, one employee would be responsible for all of the information on the MSDS for a single chemical. The change was pursued for reasons of efficiency and economy.

Because the primary responsibilities of her job would be performed at the new Skill Center and because her other duties were insufficient to support a full-time job, Crawford's department lost funding for her position. Crawford was informed on January 27, 1994 that her job was being eliminated.[2] She offered to transfer to New Jersey, but Union Carbide rejected the offer.[3] The company attempted to find

_____

[2] Union Carbide wrote a letter to Crawford dated March 31, 1994, formally notifying her that her position had been "designated as surplus." J.A. 251. The letter stated that "if you are not placed in another job by May 31, 1994, you will be laid off for lack of work as of that date." Id. The letter described the company's Enhanced Separation Program. To be eligible for the Program, Crawford would have had to have signed a release stating that she would not sue the company for any employment-related claims, including discrimination. Crawford refused to sign the release.

[3] The parties do not dispute that Crawford was unable to work at the Bound Brook facility due to her disabilities. However, although Union Carbide appeared to concede at oral argument that Crawford would have been transferred to New Jersey but for her disabilities, the record indicates that all of the Skill Center positions were filled with individuals already working at the New Jersey site. Resolution of this factual question is not necessary to our disposition of this appeal, however.

Crawford another suitable position at the Kanawha Valley facility, but the parties dispute the intensity of this effort.

Union Carbide officials first considered Crawford for a position as a process group assistant. She interviewed for the position with Thomas Maliszewski on March 4, 1994. However, Maliszewski determined that Crawford was not qualified for the position and therefore did not offer it to her. Although Crawford asserts in her brief that she was qualified for the position, she admitted in district court that she was not so qualified.[4]

The company also identified a Grade 4 polyolefins records clerk position as a possibility for Crawford. This position "involved strictly office work consisting of looking up records, changing manuals, coordinating records and creating and shipping out manuals." J.A. 124. During an interview for the position, Crawford "voiced concerns about the lifting aspect of the job" and indicated her belief that she was overqualified for the position. Id. Craig Morkert, an employee of Union Carbide's Human Resources Department, offered Crawford the position, and the company even offered to maintain Crawford's then-present salary although the new position otherwise would have entailed a decrease in pay. The company claims that it advised Crawford it would accommodate her lifting restrictions.

On March 28, 1994, Crawford; her physician, Dr. L. Blair Thrush; and Union Carbide's Kanawha Valley Medical Director, Dr. Donald F. Teter, participated in a brief conference call in which they discussed the records clerk position. Thrush concluded, based on that call and statements made to him by Crawford, that she "probably could not" perform the records clerk duties. J.A. 138. However, Thrush subsequently admitted that he had not inspected the worksite, that he "didn't know that much about the job," J.A. 139, and that in order to render an authoritative medical opinion regarding Crawford's ability to perform the duties of the position he would have had to have known more about the situation. Teter, in contrast, had examined the

_____

[4] Crawford failed to respond to Union Carbide's request for her to admit that she was not qualified for the process group assistant position. By failing to respond, Crawford is deemed to have admitted that she was not qualified. See Fed. R. Civ. P. 36(a).

4

worksite and duties and determined that Crawford"was medically capable of performing the job with appropriate accommodations." J.A. 126.

On April 12, 1994, Crawford wrote to Morkert expressing her frustration over the elimination of her position and the offer of the records clerk position. Crawford wrote that the records clerk position was "utterly beneath [her] qualifications" and that the offer "deeply offend-[ed]" her. J.A. 146. She further stated that"[u]ntil you can answer my concerns more fully or demonstrate to my reasonable satisfaction that there is no other position within Union Carbide that better suits my talents, education and skills, I simply decline to accept your degrading offer." J.A. 147.

Also on April 12, 1994, Thrush wrote a letter to Teter in which Thrush stated that Crawford's asthma was worsening, and that

> [i]t is certainly my IMPRESSION that from an occupational point of view she is extremely limited. She needs to be in an environment that is essentially free of air pollutants such as heavy dust, chemicals or heavy dirt, including paper dust. I also think that any physical exertion other than desk work would be a problem for her.

J.A. 131. Thrush did not refer to any particular employment position or duties. He mentioned that he had urged Crawford to apply to Social Security for disability benefits.

Crawford formally rejected Union Carbide's offer of the records clerk position on April 18, 1994 in a memo that stated, in its entirety, "At the recommendation of my physician, L. Blair Thrush, and as explained in my correspondence to C. Morkert dated April 12, 1994, I decline to accept the position of Grade 4 Polymers Engineering Records Center Clerk." J.A. 230.

In a subsequent letter to Morkert, dated May 18, 1994, Crawford described the rejection as follows:

> As you know I have turned down the [records clerk] position as I have been advised by my physician that such

employment would be detrimental to my health. In essence, the ... job offer is to me no offer at all as it fails to accommodate my health much less my skill.

J.A. 128.

In spite of her assertion that the position was beneath her, Crawford maintains that she would have accepted the records clerk position if Union Carbide had agreed to accommodate her disabilities by not requiring her to lift heavy boxes and by equipping the worksite with air filters. She contends, however, that the company effectively denied her requests for such accommodations by failing to respond to them.

During her deposition, Crawford stated that she verbally communicated her requests and that she thought she put them in writing to R. D. Kennedy, the Chief Executive Officer of Union Carbide. The record contains no evidence of such a written request; the record does contain a copy of an April 12, 1994 letter from Crawford to Kennedy, but in this written communication Crawford did not mention a request for accommodations for her disabilities. In response to a deposition question as to the specific accommodations verbally requested, Crawford stated that "[t]he accommodations that were requested was [sic], `I can't lift these heavy boxes, I need some help, and this room is awfully dirty.'" J.A. 63. Crawford was also asked during her deposition, "[D]id you express ... that you would take this job if these specific accommodations that you had requested were granted?" J.A. 65. Crawford answered, "I was asking for the accommodations, so that was to be insinuated, that if the accommodations were made I would do the job." Id. Crawford was also asked whether Union Carbide had denied her request for accommodations; she replied,"They didn't do it. There again, they were operating in a mode where if I'd ask questions or say something, they would ignore me." J.A. 64. Union Carbide maintains that the company told Crawford that it would accommodate her need for assistance with lifting. The company asserts, however, that Crawford failed to communicate a request for an air filter.

April 21, 1994, was the last day Crawford actually performed work at Union Carbide. Union Carbide maintains that it continued to look

6

for a suitable position for Crawford until May 31, 1994, when she was removed from the payroll. However, the company asserts that nothing within Crawford's range of qualifications and physical capabilities became available. Crawford contends that there were positions for which she was qualified and which she could have performed with reasonable accommodations, but the company did not consider her for them.

Crawford's health deteriorated after April 21, 1994. She maintains that the stress related to her employment situation was a major factor that exacerbated her asthma. In fact, Crawford's deposition testimony was that she was not capable of working after April 21, 1994.

Crawford filed this action on March 29, 1996. As relevant to this appeal, Crawford alleged: (1) that Union Carbide failed to agree to her requests for reasonable accommodations which would have made it possible for her to perform the duties of the records clerk position; and (2) that the company failed to consider her for other positions that were available during the relevant time period.

Upon completion of discovery, Union Carbide moved for summary judgment. The district court granted the motion on the basis that Crawford had failed to establish that she could perform the essential functions of the records clerk position, or any other position, as of May 31, 1994, "the date on which her employment was terminated." J.A. 345. The court therefore concluded that Crawford was not a "qualified individual with a disability" eligible for relief under the ADA.

II.

On appeal, Crawford maintains that a genuine issue of material fact exists as to whether she was a qualified individual with a disability as of May 31, 1994. She also argues that the district court erroneously selected May 31, 1994 as the relevant date for purposes of determining whether she was a qualified individual with a disability. We review the grant of summary judgment de novo, viewing the disputed facts in the light most favorable to Crawford and drawing all reasonable inferences in her favor. See Figgie Int'l, Inc. v. Destileria Serralles, Inc., 190 F.3d 252, 255 (4th Cir. 1999).

7

The ADA prohibits discrimination against a "qualified individual with a disability" with respect to "job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C.A. § 12112(a). A"qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C.A. § 12111(8). To establish a violation of the ADA, Crawford must show (1) that she has a disability; (2) that she is an otherwise qualified individual; and (3) that she has suffered unlawful discrimination based on her disability. **5** See Tyndall v. National Educ. Ctrs., Inc., 31 F.3d 209, 212 (4th Cir. 1994). One form of discrimination prohibited by the ADA is failing to make a reasonable accommodation. See 42 U.S.C.A.§ 12112(b)(5). However, "[a]n employer is not obligated to provide an employee the accommodation he or she requests or prefers; the employer need only provide some reasonable accommodation." Baert v. Euclid Beverage, Ltd., 149 F.3d 626, 633 (7th Cir. 1998).

Crawford argues that a genuine issue of material fact exists as to whether she was a qualified individual with a disability as of May 31, 1994. We disagree. During her deposition, Crawford was asked by her attorney whether she was capable of working after April 21, 1994. Obviously, a witness giving deposition testimony is free to phrase an accurate and truthful response as she desires; such freedom is probably most evident in an exchange between a party and her own attorney. We therefore deem it critical that Crawford's response to this question was a simple "[n]o." J.A. 224. Although Crawford now argues that she meant that she was unable to work without reasonable accommodations, she did not say that. By analogy to the "well established" principle that a "genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflict-

_____

**5** The parties do not dispute that Crawford was disabled for ADA purposes.

We note that although the standard for establishing liability under § 504 of the Rehabilitation Act is slightly different than under the ADA, see Baird, 1999 WL 739413, at *4-*5, that difference is not relevant to this appeal.

ing versions of the plaintiff's testimony is correct," <u>Halperin v. Abacus Tech. Corp.</u>, 128 F.3d 191, 198 (4th Cir. 1997) (internal quotation marks omitted), we are unwilling to accept Crawford's invitation to read into her own testimony something that simply is not there.**6**

Crawford also argues that the district court erred by assessing whether she was a qualified individual with a disability as of May 31, 1994 because she contends that the acts of discrimination occurred prior to that date. She suggests three alternative times for assessing her status under the ADA: as of January 27, 1994, because that is when she was informed that her position was being eliminated; after the records clerk position was offered but prior to April 21, 1994, because that is when Union Carbide effectively denied reasonable accommodations; or as of April 21, 1994, because that is the last day Crawford worked at Union Carbide and is therefore the actual date of her termination.

Even if Crawford were correct that her status as a qualified individual with a disability should have been evaluated as of a date prior to May 31, 1994, and even if she were adjudged to possess that status as of some prior date, summary judgment is nevertheless appropriate because no reasonable jury could find that Union Carbide's actions with respect to the records clerk position violated Crawford's rights under the ADA. First, there is no genuine issue of material fact as to whether Union Carbide offered to accommodate Crawford's lifting restrictions. Although the wiser course may have been for the com-

_____

**6** By reference to the same principle, we see no need to address Crawford's contention that the district court erred in discounting her physician's May 12, 1994 letter because it was not sworn. Assuming arguendo that we properly could consider the letter, it conflicts with Crawford's own sworn statement. Accordingly, it is insufficient to create a genuine issue of fact.

Crawford also argues that, in determining whether she was a qualified individual with a disability as of May 31, 1994, the district court erred in failing to take into account Crawford's assertion that the decline in her health after April 21, 1994 was due to the stress of her employment situation. The cause of Crawford's physical condition on May 31, 1994 is not relevant to a determination of whether she was then capable, with or without reasonable accommodation, of working.

9

pany to document that its offer of the records clerk position included a lifting accommodation, and although the parties do not agree that the company clearly verbalized its agreement to Crawford, the chain of events described in the record requires a conclusion as a matter of law that the offer included the lifting accommodation: during the job interview Crawford clearly stated the need for an accommodation in the form of lifting assistance, and she subsequently was offered the position. These circumstances do not support an inference that the offer did not include the lifting accommodation.

We emphasize that the following chain of events is <u>not</u> presented by this record: employee interviews for position, employee is offered position, employee then requests accommodation, employer is silent. In such a situation liability may attach to the employer's failure to respond to the request for an accommodation. <u>See, e.g.</u>, <u>Hunt-Golliday v. Metropolitan Water Reclamation Dist.</u>, 104 F.3d 1004, 1012 (7th Cir. 1997) (stating that "[a]fter an employee's request, both parties bear responsibility for determining what accommodation is necessary" (emphasis omitted)); <u>Taylor v. Principal Fin. Group, Inc.</u>, 93 F.3d 155, 165 (5th Cir. 1996) (explaining that"the employee's initial request for an accommodation ... triggers the employer's obligation to participate in the interactive process of determining one"). We simply hold that when, as here, the company is aware of an accommodation request when it extends an offer of employment, the only reasonable inference is that the offer includes the accommodation. Here, Crawford admits that the company never expressly refused to accommodate her lifting restrictions, and the record does not indicate that she made any attempt to clarify that the offer did not include the accommodation requested. Especially given the surrounding circumstances--that Union Carbide had accommodated Crawford's disabilities for the preceding ten years, had attempted to find her a replacement job when hers was eliminated for reasons completely unrelated to her disability, and even had offered to maintain her salary at its then-present level--we conclude that the record does not support a reasonable inference that the lifting accommodation was denied. <u>See Beck v. University of Wis. Bd. of Regents</u>, 75 F.3d 1130, 1135-37 (7th Cir. 1996) (affirming summary judgment in favor of employer when facts indicated that employer had history of accommodating employee's disability and employee was primarily

10

responsible for breakdown in communications concerning reasonable accommodation).

Second, with respect to the air filter accommodation, there is no more than a scintilla of evidence that Crawford ever requested such an accommodation. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986) (stating that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to defeat summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff"). As support for her assertion that she requested an air filter accommodation, Crawford points to her comment that "this room is awfully dirty," J.A. 63 (internal quotation marks omitted), and the April 12, 1994 letter from Thrush to Teter. We conclude that neither of these pieces of evidence is adequate to create a genuine issue of material fact.

Crawford's comment that "this room is awfully dirty" is so vague that no reasonable jury could conclude that it was a request for an accommodation.[7] Nor does the April 12, 1994 letter from Thrush to Teter constitute a request for an air ventilation accommodation. While the letter did state that Crawford needed "to be in an environment that is essentially free of air pollutants such as heavy dust, chemicals or heavy dirt, including paper dust," J.A. 131, it did not mention the records clerk position or worksite (or any other employment position, worksite, or duties), nor did it identify any mechanism, such as an air filter, that would be necessary to assure a dust-free environment. In fact, Crawford's deposition testimony was that she had never discussed the possibility of accommodations for the records clerk position with Thrush, and Thrush admitted during his deposition that he had not inspected the worksite, "didn't know that much about the job," J.A. 139, and could not render an authoritative medical opinion on whether Crawford would be able to perform the duties of the position without additional information. As Crawford never communicated a request for an air filter accommodation, Union Carbide cannot

_____

[7] Although the record makes abundantly clear that Crawford was willing and able to communicate other concerns to company officials in writing, there is no evidence that she requested any accommodations in writing.

11

be responsible for failing to provide one.**8** See Taylor, 93 F.3d at 165 (stating that "[i]f the employee fails to request an accommodation, the employer cannot be held liable for failing to provide one").

## III.

In sum, we conclude that the district court correctly determined that Crawford was not a qualified individual with a disability as of May 31, 1994. And, even if Crawford was a qualified individual with a disability for purposes of the records clerk position, Union Carbide satisfied its obligations under the ADA by offering her the records clerk position with the only accommodation requested--lifting assistance. Accordingly, we affirm the order of the district court granting summary judgment to Union Carbide.

AFFIRMED

_____

**8** Because we conclude that Union Carbide satisfied any duty it may have had to accommodate Crawford by offering her the records clerk position with the lifting accommodation, we need not address Crawford's allegation that the company violated her rights under the ADA by failing to consider her for other positions. See Baert , 149 F.3d at 633.

12