United States Court of Appeals,

Eleventh Circuit.

No. 95-3179.

Bernard F. McNELY, Plaintiff-Appellant,

v.

OCALA STAR-BANNER CORPORATION, a Florida corporation;  The New York Times Company, a foreign corporation, Defendants-Appellees.

Nov. 20, 1996.

Appeal from the United States District Court for the Northern District of Florida. (No. CV94-10057-MMP), Maurice Mitchell Paul, Chief Judge.

Before BIRCH and CARNES, Circuit Judges, and MICHAEL[*], Senior District Judge.

CARNES, Circuit Judge:

In this Americans with Disabilities Act ("ADA") case, Bernard McNely appeals from a judgment entered pursuant to a jury verdict in favor of the defendants, Ocala Star-Banner Corporation and the New York Times Company.  This appeal presents the question of whether a plaintiff suing under the ADA can recover for discrimination without showing that his disability was the *sole* cause for the adverse employment action taken against him.  We hold that he can, and that the district court erred by submitting to the jury a special interrogatory verdict form that allowed recovery for McNely's ADA discrimination claim only if the jury found that he was terminated "solely because of his alleged disability."  Similarly, we hold that it was error for the district court to require the jury to find that McNely was terminated "solely because

[*]Honorable James H. Michael, Senior U.S. District Judge for the Western District of Virginia, sitting by designation.

he engaged in a statutorily protected expression" in order for him to recover on his ADA retaliation claim. Finally, in view of the pleadings and evidence in this case, we hold that the district court erred by requiring the jury to find that McNely was "terminated" in violation of the ADA in order for McNely to recover on either his discrimination claim or his retaliation claim.

## I. BACKGROUND FACTS

The Ocala Star-Banner Corporation ("Star-Banner"), a subsidiary of the New York Times Company, publishes a daily newspaper entitled the "Ocala Star-Banner." McNely began his employment with Star-Banner in June 1980. Initially, McNely worked as a "pressman." Nine years later, in August 1989, McNely was promoted to Night Supervisor of the Camera Department.

In April 1992, McNely underwent brain surgery as a result of an arteriovenous malformation of the brain. That surgery was generally successful, except that McNely subsequently began experiencing vision problems. It was later determined that the surgery had caused McNely to develop a form of "left homonymous hemianopsia." In simpler terms, the surgery damaged part of McNely's brain, and as a result, he cannot clearly see the left half of visual images.

McNely's vision problems made it difficult, if not impossible, to perform "close color registration," a process involving the overlaying and lining up of color negatives to produce a color image, which is then printed onto newsprint as a color picture. Close color registration is but one of the duties of a supervisor in the camera department and, for a time, Star-Banner arranged for

someone to assist McNely with his performance of that task. That assistance came to an end, however, when Star-Banner came to believe that McNely's eye trouble could be corrected with new eyeglasses. At some point thereafter, McNely filed a grievance about his working conditions with the Equal Employment Opportunity Commission ("EEOC").

For a time, McNely managed his duties without the assistance that Star-Banner had withdrawn. In August 1993, however, McNely's vision difficulties—or his perception of them—led to a 40-minute shutdown of the Star-Banner printing presses. McNely insisted that the shutdown was caused by his inability to perform close color registration without assistance, but Star-Banner management contended it was caused by McNely's willful refusal to perform his job. Subsequently, McNely was relieved of his supervisory duties and was reassigned to the building maintenance department. When McNely objected to that, he was reassigned to do clerical work. Later, Star-Banner reassigned McNely to the shipping and loading department, which required him to perform tasks that he contends were "difficult or impossible for a man of Plaintiff's medical and physical condition to perform."

On January 18, 1994, McNely met with Charles Stout, the highest-ranking executive at Star-Banner, to discuss McNely's overall work situation, including his work assignments. That meeting did not go well. McNely ended up losing his temper and calling Stout an "arrogant son-of-a-bitch." Understandably, that conduct ended the meeting, and McNely was immediately suspended without pay. Star-Banner determined that McNely's suspension would

last for approximately six months, and that his employment would be terminated on July 28, 1994. [1] By letter, Stout informed McNely that his suspension and termination had "resulted from your repeated belligerent, abusive and insubordinate conduct towards me and others at the Ocala Star-Banner."

During his suspension, McNely received a "right to sue" notice from the EEOC. Thereafter McNely filed this lawsuit alleging violations of the ADA. In Counts I and III, McNely alleged that Star-Banner and the New York Times had wrongfully discriminated against him because of his disability. In Counts II and IV, McNely alleged that the defendants had retaliated against him for engaging in protected expression, specifically for filing his EEOC grievance.

Following five days of trial, McNely's claims were submitted to the jury with a special interrogatory verdict form. After more than seven hours of deliberation, the jury found: (1) that McNely is an "individual with a disability" within the meaning of the ADA; (2) that McNely had proven he was able to perform the essential functions of the position of Camera Room Night Supervisor; (3) that the defendants had failed to prove that they had reasonably accommodated McNely; and (4) that allowing McNely to work as a Camera Room Night Supervisor would not have imposed an undue

[1] The defendants contended that they suspended McNely for six months, instead of terminating him immediately, "[i]n an act of extraordinary compassion ... so that he would remain eligible for medical benefits," but McNely characterized the suspension as "yet another attempt by the employer to force Mr. McNely to sever his employment with the Ocala Star Banner voluntarily."

hardship on the defendants.[2] Despite those findings, the jury's ultimate verdict was for the defendants, because the jury answered "No" to questions five and six on the verdict form, as follows:

> 5. Do you find, by a preponderance of the evidence, that Plaintiff has proved that he was terminated solely because of his alleged disability?
>
> Yes _____          No ____X____

> 6. Do you find, by a preponderance of the evidence, that Plaintiff has proved that he was terminated solely because he engaged in a statutorily protected expression?
>
> Yes _____          No ____X____

After the district court denied his motion for a new trial, McNely filed this appeal. McNely's primary contentions on appeal are that the special interrogatory verdict form was fatally flawed in two ways. First, McNely contends that inclusion of the term "solely" in questions five and six erroneously prevented the jury from returning a verdict for the plaintiff if the jury found that impermissible discrimination or retaliation had a determinative effect on the defendants' decisionmaking process, but was not the sole reason for the employment decision. Second, McNely contends that questions five and six erroneously narrowed the jury's inquiry to whether McNely was "terminated" because of discrimination or retaliation, even though the ADA authorizes recovery for adverse employment actions that fall short of termination and even though

---

[2]The defendants did not cross-appeal to challenge any of these four findings, and we express no opinion about them.

McNely had put on evidence of such actions in this case.[3]

## II. STANDARDS OF REVIEW

We apply the same deferential standard of review to a special interrogatory verdict form that we apply to a district court's jury instructions. *Cf. Bank South Leasing, Inc. v. Williams,* 778 F.2d 704, 706 (11th Cir.1985) (holding that district court erred by failing to give jury instructions consistent with special interrogatory verdict). So long as the jury instructions and verdict form "accurately reflect the law, the trial judge is given wide discretion as to the style and wording employed." *U.S. v. Starke,* 62 F.3d 1374, 1380 (11th Cir.1995) (citing *McElroy v. Firestone Tire & Rubber Co.,* 894 F.2d 1504, 1509 (11th Cir.1990)).

---

[3]McNely makes two additional contentions in his quest for a new trial, but neither of those need detain us long. First, McNely contends that the verdict form and related jury instructions were flawed because they failed to address a provocation "defense" to McNely's alleged work place misconduct, including his outburst during his meeting with Stout. However, McNely does not cite, and we have not found, any authority that a provocation defense to employee misconduct is recognized under the ADA, or that provocation is in any way relevant to an ADA claim. Therefore, we reject McNely's contention that the verdict form and jury instructions should have addressed his provocation defense.

McNely also contends that the district court permitted defense counsel to engage in an impermissible "golden rule" argument at trial. McNely charges that defense counsel engaged in a prohibited golden rule argument by inviting the jury to put itself in the defendants' position when considering McNely's alleged work place misconduct and evaluating whether he was terminated because of his disability. However, an impermissible golden rule argument is an argument "in which the jury is exhorted to place itself in a party's shoes *with respect to damages.*" *Burrage v. Harrell,* 537 F.2d 837, 839 (5th Cir.1976) (emphasis added). As in *Burrage,* "[i]n this case the argument complained of was not in any way directed to the question of damages; rather it related only to the reasonableness of appellee's actions." *Id.* (citations omitted). Accordingly, the argument was not impermissible.

On appeal, we examine whether the jury instructions and verdict form, considered as a whole, were sufficient "so that the jurors understood the issues and were not misled." *Id.* (quoting *Wilkinson v. Carnival Cruise Lines, Inc.,* 920 F.2d 1560, 1569 (11th Cir.1991)). As for the subsidiary issue of whether the jury instructions and verdict form "accurately reflect the law," *Starke,* 62 F.3d at 1380, we review that *de novo,* as with any other question of law. *E.g., Swint v. City of Wadley, Ala.,* 51 F.3d 988, 994 (11th Cir.1995).

## III. WHETHER McNELY WAIVED HIS OBJECTIONS TO THE VERDICT FORM

The defendants contend that McNely waived his objections to the verdict form because he failed to state his objections to the verdict form after it was read to the jury. We disagree. McNely's counsel raised his objections to the verdict form specifically and directly on two separate occasions. Before the case was submitted to the jury, the court held a jury charge conference. At that conference, McNely's counsel objected to the verdict form on the same bases that he raises on appeal: (1) the inclusion of the term "solely" in questions five and six, and (2) the limiting use of the word "termination" in the same questions. McNely's counsel made extensive arguments in support of his request that the verdict form be modified accordingly. The district court stated that it was "not inclined to change" the form, but would consider the matter overnight. The charge conference was then continued to the next day.

When the charge conference was reconvened the next day, the following exchange occurred between the court and McNely's counsel:

> THE COURT: When we parted yesterday, I told you I didn't think I was going to change this verdict, and I'm not, except for the agreed language change we made on—I forget where it was. Other than that, it is as it was yesterday.
>
> MR. O'NEILL: Your Honor, if I may just for the record, I would like to perfect our objections to certain aspects of the verdict form that we raised yesterday; and, in particular, Your Honor, I think probably the major objection we have is the insertion of the words "solely because of the alleged disability" as that appears in Instruction 5 and Instruction 6 on the verdict form, Your Honor.

Thereafter, McNely's counsel provided the court with argument and citations of authority in support of his objections, including his objection to the limiting use of the word "termination" in questions five and six. Once again, the district court denied counsel's request to modify the verdict form.

After closing arguments, the district court delivered its instructions to the jury, including instructions about completion of the verdict form. The district court then gave counsel the opportunity to raise any new objections, but specifically stated: "[A]ll prior motions, all prior objections, both to the instructions or any matters that have taken place in the trial, all motions will be considered raised again at this time. All previous rulings will continue to apply." In view of that assurance, McNely's counsel did not raise and reargue the same objections that he had already raised and argued twice, and that the district court had twice overruled. In these circumstances, we hold that McNely's counsel preserved his objections to the verdict form, and we proceed now to the merits of those objections. *See Landsman Packing Co. v. Continental Can Co.,* 864 F.2d 721, 726 (11th Cir.1989).

### IV. WHETHER USE OF THE TERM "SOLELY" IN THE VERDICT FORM

**CORRECTLY STATED THE LIABILITY STANDARD UNDER THE AMERICANS WITH DISABILITIES ACT**

The stated purpose of the ADA is "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C.A. § 12101(b)(1) (West 1995). Title I of the ADA, which applies to the private sector, provides for the elimination of disability-based discrimination as follows:

> No covered entity shall discriminate against a qualified individual with a disability *because of* the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

*Id.* § 12112(a) (emphasis added). Title II of the ADA, which applies to public sector employment, contains a parallel provision. It provides:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, *by reason of* such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

*Id.* § 12132 (emphasis added).

The ADA also seeks to eliminate retaliation by employers against employees who seek to enforce their statutory rights. Specifically, Title IV of the ADA provides as follows:

> No person shall discriminate against any individual *because* such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

*Id.* § 12203(a) (emphasis added).

The defendants contend that the foregoing provisions impose liability only if the employer takes an adverse employment action

*solely* because of a reason prohibited by the statute, and for that reason the verdict form provided the jurors with an accurate statement of the law. Conversely, McNely contends that those provisions impose liability if a prohibited reason was but one factor in the employer's decision, so long as the inclusion of that prohibited factor made the difference in the decision. Stated differently, McNely contends that the ADA requires only "but-for" causation before liability can be imposed. In McNely's view, the verdict form misstated the liability standard applicable to this case. We agree.

### A. The Statutory Language

As with any other statute, the appropriate starting point for our analysis is the plain language of the statute itself. "We must give effect to this plain language unless there is good reason to believe Congress intended the language to have some more restrictive meaning." *Shaw v. Delta Air Lines,* 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983) (citations omitted). As an initial matter, we note that the foregoing liability provisions do not contain the word "solely," or any other similar restrictive term. Therefore, unless we can discern a very good reason to read the restrictive term "solely" into two statutory provisions where it is not found, this is a simple case.

The defendants argue that a good reason for judicially writing "solely" into the statute may be found in the ADA itself, when read in conjunction with the Rehabilitation Act. Specifically, the defendants point to the following language in the ADA:

> Except as otherwise provided in this chapter, nothing in this chapter shall be construed to apply a lesser standard

than the standards applied under title V of the Rehabilitation Act of 1973 (29 U.S.C. 790 et seq.) or the regulations issued by Federal agencies pursuant to such title.

42 U.S.C.A. § 12201(a) (West 1995). The defendants then point out that the liability provision of the Rehabilitation Act contains the word "solely," as follows:

No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall, *solely by reason of* his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C.A. § 794 (West 1985) (emphasis added). Thus, argue the defendants, the ADA can provide no greater relief to victims of discrimination than the Rehabilitation Act, which sets up a sole-cause liability scheme, *see, e.g., Severino v. North Fort Myers Fire Control Dist.,* 935 F.2d 1179, 1182-83 (11th Cir.1991) (affirming judgment in favor of employer on Rehabilitation Act claim because employee could not demonstrate that he was discriminated against solely on the basis of his handicap).

Assuming that "lesser standard" in section 12201(a) means a more plaintiff-friendly standard, the defendants' argument has some superficial appeal. However, it loses its appeal upon closer inspection, because the same ADA provision the defendants rely upon to import the sole-cause liability standard of the Rehabilitation Act contains the limiting language "[e]xcept as otherwise provided in this chapter," 42 U.S.C.A. § 12201(a) (West 1995). Because Congress has used language in the ADA that is broader than the language included in the comparable provision of the Rehabilitation Act, we are not persuaded that section 12201(a) nonetheless directs

us to import into the ADA the more restrictive Rehabilitation Act language.  Instead, we are convinced that section 12201(a), by its own terms, directs us not to do so.

Moreover, we believe that importing the restrictive term "solely" from the Rehabilitation Act into the ADA cannot be reconciled with the stated purpose of the ADA—"the elimination of discrimination against individuals with disabilities," 42 U.S.C.A. § 12101(b)(1) (West 1995).  That is true, because a standard that imposes liability only when an employee's disability is the sole basis for the decision necessarily tolerates discrimination against individuals with disabilities so long as the employer's decision was based—if ever so slightly—on at least one other factor.  A liability standard that tolerates decisions that would not have been made in the absence of discrimination, but were nonetheless influenced by at least one other factor, does little to "eliminate" discrimination;  instead, it indulges it.  The plain language of the Rehabilitation Act appears to mandate such indulgence, but the plain language of the ADA does not.

Because we believe that importing the term "solely" into the ADA is not warranted under the statute's plain language, is not authorized by section 12201(a), and is not consistent with the explicitly stated purpose of the statute, our analysis could stop at this point.  Nevertheless, for the sake of completeness, we add that even if section 12201(a) were viewed to create an ambiguity, for the following reasons, the ADA's legislative history would support the same result we reach under our plain language analysis.

*B. Legislative History*

The ADA's legislative history does not directly inform us why Congress chose to leave the word "solely" out of the liability provision of Title I (the private sector title applicable to this case), nor why Congress left that term out of the anti-retaliation provision of Title IV. However, the legislative history does clearly explain why Congress chose to leave the word "solely" out of Title II (the public sector title). Because the relevant causal language in the liability provisions of all three titles is substantially identical, *compare* 42 U.S.C. § 12112(a) ("because of the disability") *with id.* § 12132 ("by reason of such disability") *and id.* § 12203 ("because such individual has made a charge"), Congress' rationale for leaving "solely" out of the Title II liability provision sheds some light on its rationale for leaving the same word out of the parallel Title I and Title IV provisions. The House Committee Report explained the decision to leave "solely" out of Title II, as follows:

> The Committee recognizes that the phrasing of section 202 in this legislation differs from section 504 [of the Rehabilitation Act] by virtue of the fact that the phrase "solely by reason of his or her handicap" has been deleted. The deletion of this phrase is supported by the experience of the executive agencies charged with implementing section 504 [of the Rehabilitation Act]. The regulations issued by most executive agencies use the exact language set out in section 202 in lieu of the language included in the section 504 statute.

> A literal reliance on the phrase "solely by reason of his or her handicap" leads to absurd results. For example, assume that an employee is black and has a disability and that he needs a reasonable accommodation that, if provided, will enable him to perform the job for which he is applying. He is a qualified applicant. Nevertheless, the employer rejects the applicant because he is black and because he has a disability.

> In this case, the employer did not refuse to hire the individual solely on the basis of his disability—the employer refused to hire him because of his disability and because he

was black.  Although the applicant might have a claim of race discrimination under title VII of the Civil Rights Act, it could be argued that he would not have a claim under section 504 [of the Rehabilitation Act] because the failure to hire was not based solely on his disability and as a result he would not be entitled to a reasonable accommodation.

The Committee, by adopting the language used in regulations issued by the executive agencies, rejects the result described above.

H.R.Rep. No. 485(II), 101st Cong., 2nd Sess., at 85 (1990).  The Senate Committee Report contains a virtually identical passage. *See* S.Rep. No. 116, 101st Cong., 1st Sess., at 44-45 (1989).

The explanation the congressional committees gave shows that Congress knew exactly what it was doing when, by omitting the word "solely," it provided a different liability standard under Title II of the ADA than it provided under the Rehabilitation Act.  Congress deliberately used different language in the ADA, because it believed inclusion of the word "solely" in Title II could lead to absurd results.  We have no reason to believe that Congress intended to condemn absurd results in Title II of the ADA, but using substantially identical language in Titles I and IV of the same statute wanted to invite those same absurd results.  As we explain below, turning to other evidence of congressional intent, our conclusion is bolstered by the fact that when Congress enacted the ADA, the Supreme Court already had rejected the notion that "because of" in Title VII cases could be construed to mean "solely because of."

*C. The Supreme Court's Interpretation of "Because of" in Title VII Cases*

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to

discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of* such individual's race, color, religion, sex, or national origin." 42 U.S.C.A. § 2000e-2(a)(1) (West 1994) (emphasis added). The relevant causal language of Title VII's liability provision is substantially identical to the causal language at issue in this case. *Compare id.* (Title VII) ("because of") *with* 42 U.S.C.A. § 12101(b)(1) (ADA Title I) ("because of") *and* 42 U.S.C.A. § 12203 (ADA Title IV anti-retaliation provision) ("because").

When Congress enacted the ADA in 1990, the Supreme Court had already authoritatively determined that, for Title VII cases, "because of" does *not* mean "solely because of." In *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), the Supreme Court focused on the nature of the causal connection required by the phrase "because of" in Title VII cases. No opinion of the Court garnered a majority of the votes in *Price Waterhouse,* in part because the justices held differing views about whether the "because of" requirement meant that the impermissible consideration was a "but-for" cause, or meant only that it had been taken into account in the decisionmaking process. *Compare id.* at 244, 109 S.Ct. at 1787 (plurality opinion) *with id.* at 262-63, 109 S.Ct. at 1797 (O'Connor, J., concurring in the judgment). However, all of the justices agreed that "because of," as used in Title VII, does *not* mean "solely because of." *See id.* at 241, 109 S.Ct. at 1785 (plurality opinion); *id.* at 258-59, 109 S.Ct. at 1795 (White, J., concurring in the judgment); *id.* at 262-63, 109 S.Ct. at 1797

(O'Connor, J., concurring in the judgment); *id.* at 284, 109 S.Ct. at 1808 (Kennedy, J. dissenting); *see also Miller v. CIGNA Corp.,* 47 F.3d 586, 592-94 (3rd Cir.1995) (analyzing and summarizing the "because of" analysis contained in the various *Price Waterhouse* opinions).

A familiar canon of statutory construction is that "evaluation of congressional action must take into account its contemporary legal context." *Morse v. Republican Party of Virginia,* --- U.S. ----, 116 S.Ct. 1186, 1190, 134 L.Ed.2d 347 (1996) (plurality opinion) (citing *Cannon v. University of Chicago,* 441 U.S. 677, 698-99, 99 S.Ct. 1946, 1958-59, 60 L.Ed.2d 560 (1979)); *see also Motorcity of Jacksonville, Ltd. v. Southeast Bank N.A.,* 83 F.3d 1317, 1331 (11th Cir.1996) (en banc) (recognizing principle that "Congress legislates against the background of the existing common law"). That presumption is particularly compelling where, as here, Congress adopts operative language to which the Supreme Court has recently given an authoritative interpretation in a similar context. When Congress enacted the ADA, it did so against the backdrop of recent Supreme Court employment discrimination case law that interpreted the phrase "because of" *not* to mean "solely because of." We think Congress knew what it was doing, and we hold that the ADA imposes liability whenever the prohibited motivation makes the difference in the employer's decision, *i.e.,* when it is a "but-for" cause.

### D. ADA Cases from Other Circuits

Despite the plain language of the ADA, its legislative history, and the Supreme Court's interpretation of identical causal

language in Title VII, the defendants argue that we should nonetheless interpret "because of" to mean "solely because of." They contend that precedents from the Fourth, Fifth, Seventh, and Tenth Circuits support that interpretation, and point us to *Doe v. University of Maryland Medical Sys.,* 50 F.3d 1261 (4th Cir.1995); *Myers v. Hose,* 50 F.3d 278 (4th Cir.1995); *Rizzo v. Children's World Learning Ctrs.,* 84 F.3d 758 (5th Cir.1996); *Despears v. Milwaukee County,* 63 F.3d 635 (7th Cir.1995); and *White v. York Int'l Corp.,* 45 F.3d 357 (10th Cir.1995). Even if all five of those cases from four other circuits had actually held that "because of" means "solely because of" under the ADA, we would still part company with those circuits, because we are firmly convinced that such an interpretation is contrary to the language of the statute and the intent of Congress. However, in this case, our task is made much easier by the fact that only one of the five decisions cited by the defendants actually *held* that "because of" in the ADA context means "solely because of." The others did not.

In *University of Maryland Medical Sys.,* 50 F.3d at 1266, the Fourth Circuit affirmed summary judgment for an employer in an ADA case because the employee was not a "qualified employee with a disability" within the meaning of the ADA. Although the court stated that an ADA plaintiff is required to prove that he was discriminated against "solely on the basis of the disability" in order to prove his case, *id.* at 1264-65, that observation is dictum. Because the court determined that the plaintiff was not a qualified employee with a disability to begin with, it was not required to, and did not purport to, examine the causal connection

between the plaintiff's termination and his disability.

Similarly, in *Myers,* 50 F.3d at 282, the Fourth Circuit affirmed summary judgment for an employer in an ADA case because the employee was not a qualified individual with a disability. Although the court observed in dicta that "the substantive standards for determining liability are the same" under the ADA and the Rehabilitation Act, *id.* at 281, the court was not required to, and did not purport to, authoritatively resolve the issue that faces us today.

In *Rizzo,* 84 F.3d at 760, the Fifth Circuit reversed summary judgment in favor of an employer, because it found that a genuine question of material fact existed as to whether the plaintiff was a qualified individual with a disability. Because the defendant in that case did not deny that the plaintiff was terminated because of her disability, there were no causal connection questions in the case. *See id.* at 762. Although the court did observe that the ADA required the plaintiff to prove that her employer took an adverse employment action "solely because of her disability," that observation has no bearing on the court's decision; it is dictum.

In *White,* 45 F.3d at 363, the Tenth Circuit affirmed summary judgment for an employer because the employee was not a qualified individual with a disability. As with the foregoing cases, the court had no occasion to consider the causal connection question at issue in this case, and it explicitly declined to address "whether York terminated [the plaintiff] solely because of his disability." *Id.* A court does not make a holding with language directed toward an issue it expressly declines to address.

To summarize, the foregoing cases do not trouble us. Although they do contain dicta that supports the defendants' position, we are not required to follow dicta contained in our own precedents, much less dicta from our sister circuits. Dicta can sometimes be useful when it contains a persuasive analysis of a particular issue, but the opinions in the foregoing cases are not even useful for that purpose, because they do not include any meaningful analysis of whether "because of" in the ADA context means "solely because of." The passing references that those cases make to the applicable causal standard shed little or no light on the question, and give us no pause.

However, *Despears v. Milwaukee County,* 63 F.3d 635 (7th Cir.1995), is more problematic. In that ADA case, the Seventh Circuit affirmed summary judgment for an employer. *Id.* at 637. In doing so, it held—not merely stated in dicta, but held—that judgment for the employer was proper, because the alleged disability was not the sole cause of the demotion in question. No extended discussion or helpful rationale is given in *Despears* for the holding that the ADA requires a showing of sole causation. Because we believe that holding is contrary to the language of the statute, the will of Congress, and the Supreme Court's interpretation of substantially identical causal language in the Title VII context, we decline to follow it.

We hold that the "because of" component of the ADA liability standard imposes no more restrictive standard than the ordinary, everyday meaning of the words would be understood to imply. In everyday usage, "because of" conveys the idea of a factor that made

a difference in the outcome. The ADA imposes a "but-for" liability standard. The contrary verdict form language is error which requires reversal. That is not the only error in the verdict form.

## V. WHETHER THE VERDICT FORM ERRONEOUSLY LIMITED RECOVERY TO "TERMINATION"

According to questions five and six of the verdict form, in order for the jury to return a verdict for McNely on either his discrimination claim or his retaliation claim, the jury was required to find that McNely was "terminated" for a prohibited reason. However, the ADA protects against more than termination. It prohibits discrimination "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C.A. § 12112(a) (West 1995); *see also id.* § 12203 (anti-retaliation provision) (prohibiting employers to "discriminate"). In other words, the ADA prohibits a broad variety of adverse employment actions, whenever those actions are taken for a prohibited reason.

McNely's complaint alleged a variety of adverse employment actions short of his ultimate termination. Specifically, paragraphs twenty-two and twenty-three of his complaint, which were incorporated into every count, made the following allegations:

> 22. After withdrawing Plaintiff's reasonable accommodation in the Camera Department, Defendant reassigned Plaintiff to janitor's duty requiring Plaintiff to clean toilets and bathrooms, among other janitorial duties.

> 23. Defendant subsequently reassigned Plaintiff to the shipping and loading department, and required Plaintiff to perform loading and other physically strenuous tasks difficult or impossible for a man of Plaintiff's condition to perform.

It is undisputed that, after the 40-minute press delay in

August 1993, Star-Banner reassigned McNely to the building maintenance department. It is also undisputed that after McNely complained about being assigned to the maintenance department, Star-Banner reassigned him to do clerical work, and then reassigned him once again to the distribution department. At trial, evidence about those transfers was admitted, and McNely argued to the jury that those actions were taken for a discriminatory reason. In turn, Star-Banner argued that those transfers were an attempted accommodation of McNely's medical condition. The jury instructions informed the jury that McNely could recover for "adverse employment action," defined as "action that has a negative effect on terms, privileges, or other conditions of employment, such as hiring, job assignment, termination, granting leave, promotion and compensation." Nevertheless, over McNely's objection, the district court declined to modify the verdict form to permit recovery for adverse employment action short of termination. As a result, the verdict form was inconsistent with the ADA, with the complaint, with the evidence presented at trial, and with the jury instructions.

## VI. CONCLUSION

The verdict form submitted to the jury in this case did not accurately reflect the law or the evidence presented at trial. First, the verdict form required a finding of sole causation in order for McNely to recover, while the ADA requires only a finding of "but-for" causation. Second, the verdict form barred recovery for adverse employment actions short of termination, when the ADA permits recovery for those less drastic forms of discrimination and

when evidence of such lesser discrimination was presented at trial. Under these circumstances, we cannot conclude that the jurors understood the issues and were not misled by the verdict form. *See U.S. v. Starke*, 62 F.3d 1374, 1380 (11th Cir.1995) (quoting *Wilkinson v. Carnival Cruise Lines, Inc.*, 920 F.2d 1560, 1569 (11th Cir.1991)).

Therefore, we REVERSE the judgment of the district court and REMAND for a new trial.