BETH BLOOM, UNITED STATES DISTRICT JUDGE
THIS CAUSE is before the Court upon Defendant's Motion to Dismiss Plaintiff's Amended Complaint (the "Motion"). See ECF No. [34]. The Court has reviewed the Motion, all supporting and opposing submissions, the record and applicable law, and is otherwise fully advised. For the reasons that follow, Defendant's Motion is denied.
I. BACKGROUND
Plaintiff Kim Patrick Johnson ("Plaintiff") resides in Margate, Florida. See ECF No. [23], at ¶ 4. Defendant Bennett Auto Supply, Inc. ("Defendant"), a Florida corporation, has a few stores throughout Florida that "sells parts, tools, equipment, and other products related to car care." Id. at ¶ 6. Plaintiff worked for Defendant for about 27 years until he was terminated on January 24, 2017. Id. at ¶¶ 9-10.
Plaintiff initially worked for Defendant in a counter sales position that consisted of "taking orders over the phone, helping walk in clients," and managing clients' accounts. Id. at ¶¶ 10-11. Plaintiff worked in a counter sales position for 22 years. Id. at ¶ 10. For the first twelve years, Plaintiff worked at Defendant's store in Oakland Park. Id. Plaintiff thereafter worked at Defendant's store in Plantation, under manager Mario Acosta ("Acosta"), for ten years. Id. At all times Plaintiff's work was satisfactory, and in 2012, Plaintiff was the *1281 second highest sales writer of Defendant's store in Plantation. Id. at ¶¶ 10, 12.
Before 2012, Plaintiff suffered from rheumatoid arthritis for several years. Id. at ¶ 13. In 2012, Plaintiff's arthritis worsened significantly, such that Plaintiff could not stand or sit for long periods of times or lift heavy weights. Id. As a result of this development, in May 2012, Plaintiff asked Acosta to provide a stool to avoid standing for a significant amount of time. Id. at ¶ 14. Acosta asked for a doctor's letter confirming Plaintiff's medical condition. Id. Plaintiff provided Acosta with a doctor's letter stating Plaintiff was unable to lift weights exceeding sixty pounds, and could not stand for extended periods of time. Id. at ¶ 15. Acosta then provided Plaintiff a stool to accommodate his disability. Id. at ¶ 16. However, at the same time, Defendant instructed Plaintiff that "since the store had already accommodated him by providing him with the stool," Plaintiff could no longer take the two fifteen minute breaks given each day to all other employees. Id. Defendant then transferred Plaintiff four times to three different stores over a twenty-one-month period. Id. at ¶ 17. Each time that Defendant transferred Plaintiff, Defendant's agents and employees encouraged Plaintiff to resign. Id. at ¶ 23.
In 2014, Acosta and Anita Smith ("Smith"), who oversaw Defendant's Human Resources Department, notified Plaintiff about mistakes he made using the new MAM system that Defendant was implementing. Id. at ¶ 19. Plaintiff did not receive proper training on how to use the MAM system. Id. Nevertheless, Acosta and Smith told Plaintiff that because of his mistakes using the system, Plaintiff had to be demoted to cashier, which was a lesser paid position. Id. at ¶ 19. However, right before starting the new position, Defendant informed Plaintiff that he had to be a warehouse driver if he wished to continue working with Defendant, as there were no cashier positions open. Id. at ¶ 20. Defendant's agents and employees again encouraged Plaintiff to resign. Id. at ¶ 23. The warehouse driver position entailed driving from warehouses to stores and loading and unloading the truck. Id. at ¶ 21. Plaintiff, because of his rheumatoid arthritis, could not sit for long periods of time or lift weights exceeding sixty pounds. See Id. Yet Plaintiff felt he had no choice, and took the warehouse driver job because he did not want lose his job at the place he had worked for about twenty-four years. Id. at ¶ 22. Plaintiff struggled in the driver position, especially quickly loading and unloading the truck, because of his rheumatoid arthritis. Id. at ¶ 24. As a result, Defendant complained about Plaintiff's job performance, stating that Plaintiff was not keeping on time with the delivery schedule. Id. After Plaintiff got into a truck accident on January 16, 2017, Defendant fired Plaintiff. Id. at ¶ 25.
Plaintiff alleges that Defendant created a hostile work environment by altering the terms and conditions of his employment due to his disability. Id. at ¶ 26. Additionally, Plaintiff maintains that Defendant's stated reason for terminating Plaintiff was a pretext for unlawful discrimination. See Id. Plaintiff alleges he suffered "severe emotional distress, loss of wages, loss of bonuses, loss of health insurance, and loss of other employee benefits." See Id. at ¶ 27.
On April 28, 2017, Plaintiff filed a charged with the U.S. Equal Employment Opportunity Commission ("EEOC") against Defendant for harassment and discrimination on the job and claiming Plaintiff's termination was due to discrimination. Id. at ¶ 28. On September 28, 2017, EEOC gave Plaintiff Notice of Right to Sue Defendant. Id. at ¶ 29. On April 6, *1282 2018, Plaintiff filed the Amended Complaint, alleging one Count of unlawful disability discrimination in violation of the Americans with Disabilities Act ("ADA"). See ECF No. [23]. Defendant thereafter moved to dismiss. See ECF No. [34]. The parties have filed their opposing and supporting submissions. See ECF Nos. [35], [36]. The Motion is ripe for consideration.
II. Legal Standard
Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint, or a portion thereof, for "failure to state a claim upon which relief can be granted." In reviewing a motion to dismiss, the Court must accept the factual allegations as true and construe them broadly in the light most favorable to the plaintiff. See Watts v. Fla. Int'l Univ. , 495 F.3d 1289, 1295 (11th Cir. 2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly , 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ). Conclusory statements, assertions, or labels will not survive a Rule 12(b)(6) motion to dismiss. See Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. ; see also Edwards v. Prime, Inc. , 602 F.3d 1276, 1291 (11th Cir. 2010). While courts may make reasonable inferences in a plaintiff's favor, they are not required to draw the plaintiff's inference. See Sinaltrainal v. Coca-Cola , 578 F.3d 1252, 1260 (11th Cir. 2009). Finally, the Court's "analysis of a 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto." Brooks v. Blue Cross & Blue Shield of Fla., Inc. , 116 F.3d 1364, 1368 (11th Cir. 1997) (citation omitted).
III. DISCUSSION
Defendant raises two arguments in support of dismissal. First, Defendant argues that Plaintiff's claim should be dismissed because the EEOC issued a notice of a right to sue before the 180-day administrative period expired. See ECF No. [34], at 4-6. Second, Defendant maintains that Plaintiff does not state a cause of action. Id. at 6-8. The Court addresses each argument in turn.
A. EEOC issued a notice of right to sue before 180-day administrative period.
Defendant first argues that Plaintiff's claims should be dismissed because the EEOC did not follow its own regulations when it issued a notice of right to sue within 180 days. More specifically, Defendant contends that Plaintiff has failed to exhaust his administrative remedies by virtue of the EEOC's premature issuance of a notice of right to sue letter that failed to indicate that the EEOC was unable to complete its administrative processing of the charge within 180 days, as required by 29 C.F.R. § 1601.28(a)(2). See ECF No. [34], at 5-6. However, the Eleventh Circuit has squarely rejected the proposition that "any deficiency in the EEOC's performance of its duties should ... adversely affect a plaintiff's right to sue." Forehand v. Fla. State Hosp. at Chattahoochee , 89 F.3d 1562, 1571 (11th Cir. 1996).
In Sims v. Trus Joist MacMillan , 22 F.3d 1059, 1060 (11th Cir. 1994), the Eleventh Circuit faced the same argument presently before the Court: "whether a complainant is barred from bringing an action in federal district court until 180 days after filing his complaint with the EEOC." In Sims , the claimant had requested *1283 a right-to-sue letter from the EEOC at about the same time the EEOC received his charge. See Id . The EEOC then issued the claimant's right-to-sue letter less than two weeks after the charge had been filed because the charge would not be processed within 180 days. See Id . In holding "that early issuance of a notice of right to sue based on the [EEOC's] certification that it will be unable to process the charge within 180 days does not preclude a claimant from filing an action in federal court," the Eleventh Circuit stated as follows:
(1) 29 C.F.R. § 1601.28(a) does not prohibit the EEOC from issuing an early right to sue notice prior to the expiration of a 180-day period; (2) the purpose of the 180-day period is to protect the aggrieved party from extended administrative proceedings or bureaucratic backlog; and (3) where the EEOC determines, due to its huge backlog, that it cannot investigate an aggrieved party's charge within the 180-day period and notifies the aggrieved party that it is terminating its investigative efforts, it is pointless for the aggrieved party to stand by and mark time until the 180-day period expires.
Id. at 1060-61. The Eleventh Circuit also pointed out that Title VII "does not condition an individual's right to sue upon the EEOC's performance of its administrative duties." Id. at 1063 (quoting Jefferson v. Peerless Pumps Hydrodynamic, Div. of FMC Corp. , 456 F.2d 1359, 1361 (9th Cir. 1972) ).[1]
Thus, Sims makes it clear that the EEOC's premature issuance of a notice of right to sue letter does not preclude a plaintiff from filing suit in federal court before the expiration of the 180-day statutory period. Such an argument "is in conflict with the statute, congressional intent, and policy considerations." Id. ("[N]othing indicates that Congress would preclude a complainant from filing suit in federal court before the expiration of the 180-day period. It seems illogical to us that a complainant who receives a right to sue letter from the EEOC stating that it is unable to investigate the complainant's charge within the prescribed time must sit idly by until the 180-day period expires."). Accordingly, the EEOC's issuance of a notice of right to sue within 180 days and without certification that it was unable to process the charge does not warrant dismissal of Plaintiff's claim.
B. Claim for Unlawful Disability Discrimination under the ADA.
Defendant also argues that Plaintiff does not state a cause of action under the ADA. See ECF No. [34], at 6. Plaintiff brings forth one claim of disability discrimination under the ADA. See ECF No. [23], at 5. Under the ADA, Plaintiff must establish the following three elements to have a prima facie case: (1) the plaintiff "has a disability"; (2) the plaintiff is a "qualified individual"; and (3) the plaintiff was discriminated against because of a disability. See Harris v. H & W Contracting Co. , 102 F.3d 516, 519 (11th Cir. 1996). For the reasons that follow, Plaintiff has alleged each element of unlawful disability discrimination under the ADA.
1. Plaintiff has a disability
A "disability" includes a physical or mental impairment that substantially limits *1284 one or more major life activities of such individual ...." 42 U.S.C. § 12102(1) (2018). The Eleventh Circuit endorsed the Code of Federal Regulations interpretation of impairment. See Harris v. H & W Contracting Co. , 102 F.3d 516, 520 (11th Cir. 1996). A physical impairment is "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal ...." 29 C.F.R. § 1630.2(h)(1)(ii) (2018). Rheumatoid arthritis is a condition that impacts the musculoskeletal system. "An impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." § 1630.2(j)(1)(ii) (2018). "Major life activities" include standing and sitting. § 1630.2(i)(1)(i). Here, Plaintiff's arthritis is a disability, as the arthritis is an impairment that substantially limits the plaintiff's major life activities since the Plaintiff can no longer stand or sit for long periods of time. See ECF No. [23], at ¶ 13.
Defendant urges that "the Court should note that numerous rheumatoid arthritis cases hold that rheumatoid arthritis is often not a disability under the ADA" and cites to two cases from different jurisdictions: Graver v. Nat'l Eng'g Co. , No. 94 C 1228, 1995 WL 443944, at *11 (N.D. Ill. July 25, 1995) and Barnes v. Nw. Iowa Health Ctr., 238 F.Supp.2d 1053, 1068-71 (N.D. Iowa 2002). See ECF No. [34], at 7. Defendant, however, does not provide the Court with any analysis or explanation regarding how those cases apply, if at all, to the specific facts of the present case. Additionally, the cases are not analogous to the present case. In Graver , the court granted summary judgment and found that the plaintiff walking with a limp was not a disability because "there [was] no evidence that this limp significantly impaired his ability to walk, care for himself, or perform the functions in his job." Graver , 1995 WL 443944, at *11. Furthermore, the court emphasized that the plaintiff never "informed his superiors, or anyone else at work, that he was disabled." Id. Here, Plaintiff informed Defendant about his disability by providing a doctor's note that he had rheumatoid arthritis. See ECF No.[23], at ¶¶ 14, 16. Additionally, the disability impacted the Plaintiff's ability to sit and stand for long periods of time, and when Defendant assigned Plaintiff to driver's duties, the disability made it hard for Plaintiff to perform the job. Id. at ¶¶ 13, 21, 24.
Moreover, in Barnes , the court on summary judgment found that the plaintiff did not have a disability. Barnes, 238 F.Supp.2d at 1077-78. Since the plaintiff's arthritis was under control (the "rheumatoid arthritis was not restricting any activities in which [plaintiff] wanted to engage but could not because of [plaintiff's] disease") and the plaintiff's standing and walking restrictions were temporary and "arose out of her foot surgery," the plaintiff did not have a disability under the ADA. Id. at 1070-71. Here, on the other hand, the Plaintiff has alleged that the rheumatoid arthritis was not under control, as the arthritis made it impossible for Plaintiff to walk or stand for long periods of time, or lift heavy weights, and the Plaintiff's restrictions were due to rheumatoid arthritis. See Barnes, 238 F.Supp.2d at 1070-71 ; See ECF [No. 23], at ¶ 13. Thus, Plaintiff has sufficiently alleged a disability under the ADA.
2. Plaintiff is a Qualified Individual
Defendant argues that Plaintiff is not qualified because Plaintiff crashed the vehicle. See ECF No. [34], at 7; See ECF No. [36], at 5. A qualified individual, under the ADA, is an employee capable of performing *1285 "the essential functions" of the job held or the job sought "with or without reasonable accommodation." Reed v. Heil Co. , 206 F.3d 1055, 1061 (11th Cir. 2000) ; Holbrook v. City of Alpharetta , 112 F.3d 1522 (11th Cir. 1997). Essential functions are "the fundamental job duties of the employment position." 29 C.F.R. § 1630.2(n)(1) (2018).
Plaintiff has sufficiently alleged that he was a qualified individual because Plaintiff could perform all the "fundamental job duties" when he was a driver. See Reed v. Heil Co. , 206 F.3d at 1061 ; See § 1630.2(n)(1) ; See ECF No. [23], at ¶ 34.
Defendant cites to several cases in in support of their argument that the accident makes Plaintiff an unqualified individual. See ECF No. [36], at 5. However, none of the cases are persuasive as the cases do not support the contention that crashing a company's vehicle makes Plaintiff an unqualified individual under the ADA, and therefore, supports dismissal. See Id. In Ibarra v. Sunset Scavenger Co. , No. C 01 2875 SI, 2003 WL 21244096 (N.D. Cal. May 21, 2003), the plaintiff did not merely crash the company's vehicle. Id. at 7. Rather, the plaintiff drove the company vehicle without authorization; "incurred an arrest for drunk driving while driving the company vehicle; caused an avoidable accident in the vehicle that resulted in injury to a person and property damage; ... failed to properly report the accident[;]" and was unable to obtain to a driver's license therefore allowing termination according to the collective bargaining agreement. Id. The court granted summary judgment as it determined that the defendant had a nondiscriminatory reason for firing the Plaintiff that was not due to a disability: the plaintiff could not obtain a driver's license. Id. at 9.
The second case Defendant cites is Kalkhorst v. UPS, Inc. , 375 F.Supp.2d 1079 (D. Colo. 2005). In Kalkhorst , the plaintiff also did not merely crash the company's vehicle. Id. at 1080. Instead, the plaintiff failed to report an accident, an infraction that was grounds for automatic termination under the company's collective bargaining agreement with the driver's union. Id. The court granted summary judgment as there was not sufficient evidence "to raise a genuine doubt that [the defendant's] motivation in terminating his employment was anything other than his failure to report the accident, or some other nondiscriminatory reason." Id. at 1083.
The final case Defendant cites is Baur v. J.B. Hunt Transp., Inc. , No. 01-CV-10266-BC, 2002 WL 1798894 (E.D. Mich. Aug. 5, 2002), an age discrimination case arising under Michigan's Civil Rights Act. In Baur , the plaintiff first got into a minor accident and was placed on probation. See Id. at *1. The day after the plaintiff was off probation, the plaintiff got into a major accident. See Id. at *2. The court ultimately concluded that the plaintiff could not meet his burden on summary judgment to show that he was fired for any reason other than his collision with "his truck into another vehicle on the day after he completed another safety-related probation period." Id. at *10.
Here, the facts as alleged are inapposite. The Defendant demoted Plaintiff from a cashier position that he successfully held for twenty-four years, and assigned Plaintiff to be a warehouse driver even though Defendant knew that Plaintiff had rheumatoid arthritis and would struggle as a driver given that he could not sit for long periods of time or lift weights heavier than sixty pounds. See ECF No. [23], at 2-4. While Plaintiff indeed struggled, especially in "quickly" loading and unloading the truck due to his arthritis, Plaintiff nonetheless remained in the position, seemingly without incident, for three to four years.
*1286 See Id. at 4. Defendant then fired Plaintiff after crashing the company's vehicle once. See Id. Besides this one accident, Defendant could not point to any other facts that show Plaintiff was not a qualified individual driver. Thus, taking the allegations as true and viewing them in a light most favorable Plaintiff, the Court finds that Plaintiff is a qualified individual under the ADA.
3. Discrimination based on a disability
Plaintiff has alleged that he was subject to a series of discriminatory and adverse employment actions, including termination. See ECF No. [23], at ¶¶ 14-17, 19-21, 23-25. Discrimination under the ADA applies to "adverse actions" that are not as extreme as termination of the employee. See McNely v. Ocala Star-Banner Corp. , 99 F.3d 1068, 1076 (11th Cir. 1996). "An employment action is considered 'adverse' if it results in some tangible, negative effect on the plaintiff's employment." Lucas v. W. W. Grainger, Inc. , 257 F.3d 1249, 1261 (11th Cir. 2001). An employer implementing a negative action against an employee "because of" a disability violates the ADA even if it is not the sole factor, as long as the "prohibited motivation" was a deciding factor. See McNely , 99 F.3d at 1076. The "prohibited motivation" would have to satisfy "but-for" causation standard: but-for the employer's "prohibited motivation" for taking the action, the action would have never occurred. See Id. Additionally, past discriminatory acts that occurred outside the 300 days preceding the day plaintiff filed a complaint with EEOC can be considered timely. See National R.R. Passenger Corp. , 536 U.S. 101, 113, 118, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). As long as the past discriminatory acts are part of the same claim or can be used for background evidence for actions that occurred in the 300-day period, the actions outside the 300-day period are timely. See Id.[2]
Accepting all the allegations as true, but-for Plaintiff notifying Defendant about his rheumatoid arthritis, Defendant would not have forbidden Plaintiff from taking breaks, encouraged Plaintiff to resign, transferred Plaintiff numerous times in a short amount of time, demoted Plaintiff to a position that Defendant knew would be more difficult for him to perform, and ultimately fired Plaintiff. See McNely v. Ocala Star-Banner Corp. 99 F.3d at 1076 ; See ECF No. [23], at ¶¶ 14-17, 19-21, 23-25. Thus, Defendant's second argument for dismissal is rejected.[3]
IV. CONCLUSION
The Court finds that EEOC issuing a notice of right to sue before the 180-day administrative period expired does not disqualify Plaintiff's claim. Additionally, Plaintiff alleged enough facts to establish that Defendant discriminated against Plaintiff in violation of the ADA. As a *1287 result, it is ORDERED AND ADJUDGED that
1. Defendant's Motion to Dismiss, ECF No. [34], is DENIED .
2. Defendant shall file its Answer to the Complaint no later than August 10, 2018.
DONE AND ORDERED in Miami, Florida, this 31st day of July, 2018.

As such, whether the EEOC's notice in this case came with a certification that it was unable to process the charge within 180 days is immaterial to whether Plaintiff can sue. See Forehand , 89 F.3d at 1570 ("In this case, the EEOC did not certify that it would be unable to complete processing within 180 days. However, Title VII does not condition an individual's right to sue upon the EEOC's performance of its administrative duties.") (internal quotations omitted) (quoting Sims , 22 F.3d at 1063 ).

Accordingly, Plaintiff's complaints about incidents of discrimination that occurred more than 300 days before Plaintiff filed a charge with the EEOC are not discarded, since Plaintiff alleges that all the adverse actions he suffered are part of the same general claim that Defendant began discriminating against him once Defendant learned about Plaintiff's disability. See National R.R. Passenger Corp. , 536 U.S. 101, 113, 118, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).

The Court need not address Defendant's argument that Plaintiff's Complaint should be dismissed for Plaintiff's violation of the Court's orders "because the penalty is so drastic [that] a district court may dismiss a case ... only where there is a clear record of delay or willful contempt and a finding that lesser sanctions would not suffice." See Kilgo v. Ricks , 983 F.2d 189, 192 (11th Cir. 1993) (internal quotations marks and citations omitted).