[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-13024
Non-Argument Calendar
_____

D.C. Docket No. 8:16-cv-00814-MSS-MAP

SCOTT BARFIELD,

Plaintiff-Counter Defendant-Appellee,

versus

APRO INTERNATIONAL, INC.,

Defendant-Counter Claimant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(July 17, 2019)

Before MARTIN, NEWSOM and BLACK, Circuit Judges.

PER CURIAM:

This appeal arises out of Appellee Scott Barfield's suit against APRO International, Inc. (APRO) for breach of contract and unjust enrichment. Following trial, a jury returned a verdict finding Barfield had not proven his claim for breach of contract, but awarded him damages for unjust enrichment. APRO appeals the jury's verdict, arguing the district court erred when it (1) denied APRO's motion for judgment as a matter of law; (2) denied APRO's motion to modify the verdict form; and (3) denied APRO's renewed motion for judgment as a matter of law following the jury's verdict. After review, we affirm.

## I.  BACKGROUND

In February 2016, Barfield initiated an action against APRO in the Manatee County, Florida Circuit Court, alleging the existence of a contract for payment of salary, pursuant to which APRO agreed to pay its officers, including Barfield, a portion of their salary at a later date. Barfield claimed he was never paid the deferred portion of his salary. After removing the case to federal court, APRO answered, denying the existence of any deferred-salary agreement and maintained Barfield was not owed any unpaid salary. APRO also asserted a counterclaim, pursuant to which APRO sought, in part, a declaratory judgment stating APRO had fulfilled its contractual obligation to compensate Barfield—an obligation that did not include payment of deferred salary—and Barfield had been paid all salary to which he was entitled. The case proceeded to trial.

2

*A. Evidence Presented to the Jury*

Because this appeal largely concerns whether the evidence presented at trial was sufficient to support the jury's verdict, we focus on the facts as they were presented at trial through testimony and exhibits.

Barfield was one of the original officers, stockholders, and directors of APRO.  At the time APRO was formed, Barfield was employed at another company, PM Services, Inc., which was owned by Carole Metour, another APRO stockholder and director.  From October 2010 to the end of May 2011, Barfield provided financial and accounting services to APRO in his capacity as an employee of PM Services.  On June 1, 2011, Barfield began working for APRO full time as Director of Accounting.  His employment with APRO was documented in a written offer of employment, which indicated his starting compensation would be $43.27 per hour, or approximately $90,000 annually.

Almost immediately, however, on July 1, 2011, Wanda Hale, APRO's president and CEO, issued a memorandum to all "Executive Management" (which included Barfield, Hale, and Alicia Reilly) stating as follows:

> As of the payroll ending July 8th all executive management personnel will be on deferred salary until further notice.  This decision was necessary to maintain sufficient operating capital until contract billings can be established.  During this time managers may request distributions from salary, not to exceed 40% of their deferred balance.

3

According to Barfield and the memo itself, the decision to defer compensation was necessary because APRO had very little revenue at the time, owing in part to its failure to procure any "prime contracts" from the U.S. government.  Although Hale did not issue the memorandum until July 2011, Barfield was aware at the time he accepted the offer of employment from APRO that his salary would be deferred.

In accordance with the memorandum, none of the executive management received full compensation from July 2011 through April 2013.  Once APRO's revenues had grown to the point that it could begin paying the executive management some compensation, Hale circulated a compensation formula proposal for review, based on information from the Economic Research Institute (ERI).

In April 2013, the APRO Board of Directors held a telephone meeting, during which they adopted a resolution setting target salaries for the three executives based on the ERI data.  They also decided the executives would begin receiving compensation in the amount of 15 percent of the ERI target salaries beginning on May 1, 2013.  The resolution further provided for increases in compensation for the executives without prior approval of the Board in the event APRO met certain performance objectives.  Barfield was present for the meeting and received a copy of the meeting minutes.  There was no discussion during this meeting explicitly approving deferred salaries.

4

Effective November 1, 2013, the Board increased executive compensation from 15 percent to 30 percent, consistent with the April 2013 resolution.  The salaries remained at this level until January 2016, when the Board again increased salaries from 30 percent to 80 percent of the target ERI salaries.

Throughout this time, Barfield, as Director of Accounting, had been in charge of maintaining APRO's financial records.  Starting in January 2013,[1] APRO's financial records—including salary deferral schedules, balance sheets, and corporate tax returns—indicated the deferred salaries were carried as an APRO liability.  Barfield testified that Hale regularly reviewed APRO's financial records, and she did not object to APRO's carrying the deferred officer salaries as a liability.  He further testified that, following the April 2013 Board meeting, he had discussions with Hale concerning "how we were going to handle the deferred salaries" and how they were to be accounted for in APRO's financial records. Barfield resigned his employment with APRO in February 2016.

B.  *APRO's First Motion for Judgment as a Matter of Law*

At the close of Barfield's case in chief, APRO moved for judgment as a matter of law, pursuant to Fed. R. Civ. P. 50(a), as to all of Barfield's causes of action and Count 1 of APRO's counterclaim (its request for a declaratory

---

[1] Barfield did not seek deferred compensation for 2011 or 2012.  He testified the officers "had agreed that we weren't going to accrue the deferred officer salaries until we had a line of credit application in place or we were moving towards that once we won a contract."

judgment).  The district court denied the motion, finding that, based on the evidence presented, "the jury could conclude based upon the manner in which [A]PRO continued to maintain the deferred officer compensation as a liability that it was due to be paid and is still yet unpaid."

At the close of all evidence, APRO renewed its motion, and the district court again denied it, noting the jury would have to decide whether a contract existed and, if so, what material terms it included.

### C.  The Jury Instructions and Verdict Form

By the time the case was submitted to the jury, the only remaining claims were Barfield's claims for breach of contract and unjust enrichment.  The parties and the court agreed that, under Florida law, Barfield would only be entitled to damages for unjust enrichment in the event the jury found there was no contract for the payment of salary at all.  Consistent with this, the court provided the jury with the following instruction:

> **No Claim for Unjust Enrichment if There is an Express Contract**
>
> A claim for unjust enrichment is based on a legal fiction that implies the existence of a contract between the parties, even though they did not assent to one.  Therefore, a claim for unjust enrichment cannot be asserted if the parties entered into an express contract regarding the issue in dispute.  If you find that Mr. Barfield and APRO International entered into an express contract regarding salary, you must find your verdict in favor of APRO International on that aspect of Count II of the Complaint.

The court, however, rejected APRO's request to revise Question 1 of the verdict form, which read, "Did Plaintiff Barfield prove that the Parties entered into a contract for the payment of officer deferred compensation?" If the jury answered "NO" to Question 1, the form directed the jury to skip to Question 4, which asked whether Barfield had proven his claim for unjust enrichment. APRO expressed concern that the verdict form could be confusing to the jury because, when read in conjunction with the above jury instruction, it could lead the jury to believe that the "express contract" referred to in the instruction was an express contract that included a deferred-salary term, as opposed to *any* express contract regarding salary.

The court declined to alter the verdict form, concluding the form was sufficiently clear and noting that "[t]he only contract claim [Barfield has] brought is one for deferred compensation, and if that's not proven then he loses on his contract claim."

While reading the instructions to the jury, the district court projected the written instructions for the jurors to read, and the jurors were permitted to take copies of the instructions back to the jury room. The court also reviewed the verdict form with the jurors.

### D.  *The Jury's Verdict and APRO's Post-Judgment Motion*

The jury returned a verdict finding Barfield had not proven he and APRO had entered into a contract for the payment of deferred officer compensation, but that he

7

had proven his claim for unjust enrichment.  It awarded him damages in the amount of $154,000 as to that claim.

Following the verdict, APRO timely renewed its Rule 50(a) motion for judgment as a matter of law, arguing that: (1) the parties' express contract regarding Barfield's salary—which APRO claimed was evidenced in the minutes of the April 2013 meeting—precluded a verdict for unjust enrichment; and (2) the verdict form was inconsistent with the jury instructions and caused jurors to be confused.  The district court ultimately denied the motion, and the instant appeal followed.

## II.  ANALYSIS

### A.  APRO's Rule 50(a) Motions for Judgment as a Matter of Law

We review the district court's denial of a motion for judgment as a matter of law under Rule 50(a) *de novo*, applying the same standard as the district court. *Ross v. Rhodes Furniture, Inc.*, 146 F.3d 1286, 1289 (11th Cir. 1998).  "We consider all the evidence, and the inferences drawn therefrom, in the light most favorable to the nonmoving party."  *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1275 (11th Cir. 2008) (quotations omitted).  "We will reverse only if the facts and inferences point overwhelmingly in favor of one party, such that reasonable people could not arrive at a contrary verdict."  *Id.* (quotations omitted).

APRO argues the district court erred when it denied APRO's motion for judgment as a matter of law following the close of Barfield's case in chief.

8

Specifically, APRO contends the jury would not have had a "legally sufficient evidentiary basis to find" the existence of an express contract for the payment of deferred salary.  APRO also argues the district court erred when it denied APRO's renewed motion following the jury's verdict.

Under Florida law, contract formation requires the following elements: "(1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (citing *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004)).  Moreover, "mutual assent is a prerequisite for the formation of any contract." *Kolodziej v. Mason*, 774 F.3d 736, 741 (11th Cir. 2014) (citing *Gibson v. Courtois*, 539 So. 2d 459, 460 (Fla. 1989) ("Mutual assent is an absolute condition precedent to the formation of the contract.")).  "A valid contract—premised on the parties' requisite willingness to contract—may be 'manifested through written or spoken words, or inferred in whole or in part from the parties' conduct.'" *Id.* (quoting *L & H Constr. Co. v. Circle Redmont, Inc.*, 55 So. 3d 630, 634 (Fla. 5th DCA 2011)).

Implicit in APRO's assertion that it was entitled to judgment as a matter of law at various points in the proceeding is its contention that the evidence presented to the jury was consistent with one, and only one, conclusion: Barfield and APRO entered into an express contract for compensation—the parameters of which are detailed in the minutes of the April 2013 Board meeting—that did not include

9

payment of deferred salary.  The district court disagreed, ultimately concluding a jury could just as reasonably conclude either that the parties entered into an enforceable contract for payment of salary that included deferred salary or that no enforceable contract was ever formed between the parties.

Given the relatively informal nature of the negotiation between the parties and the absence of any formal employment contract, we agree with the district court that there were factual questions concerning the parties' intentions that were properly submitted to the jury.  APRO makes much of the minutes from the April 2013 Board meeting, which reflect the Board's adoption of a resolution to begin paying the officers, including Barfield, a percentage of their annual salaries.  They insist the minutes establish conclusively that the parties entered into an express contract for payment of salary, the terms of which are fully and exclusively laid out in that document.  But we see no reason to focus particularly on this document to the exclusion of the parties' other actions and correspondence, including the 2011 memorandum indicating the officers' salaries would be deferred, APRO's financial records, and Hale's communications with Barfield—both before and after the April 2013 Board meeting—concerning salary.

Given the evidence before it, the jury could reasonably have concluded, as it apparently did, that no enforceable contract for the payment of salary existed at all, on the ground there was no agreement as to the essential terms of the contract and,

10

therefore, no mutual assent.  *See Kolodziej*, 774 F.3d at 741; *Vega*, 564 F.3d at 1272.  Because the facts and inferences here do not "point overwhelmingly in favor of" APRO's view, we see no reason to reverse on the ground that the district court was required to direct a verdict for APRO on either count of the complaint. *See Goldsmith*, 513 F.3d at 1275.

### B. The Verdict Form

"On appeal, we examine whether the jury instructions and verdict form, considered as a whole, were sufficient so that the jurors understood the issues and were not misled." *McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1072 (11th Cir. 1996) (quotations omitted).  We review *de novo* the "subsidiary issue of whether the jury instructions and verdict form accurately reflect the law." *Id.* (quotations omitted).

As it argued below, APRO maintains the verdict form was misleading and inconsistent with applicable law.  Specifically, APRO speculates the jury could have erroneously believed Barfield could recover damages for unjust enrichment even if it found an express agreement existed as to the payment of salary, so long as it found that express agreement did not include a deferred-salary term. However, as APRO acknowledges, the jury instructions included an accurate statement of the law, informing the jury that "[i]f you find that Mr. Barfield and APRO International entered into an express contract regarding salary, you must

11

find your verdict in favor of APRO International on that aspect of Count II of the Complaint."

"A jury is presumed to follow its instructions," *Weeks v. Angelone*, 528 U.S. 225, 234 (2000), and we see no reason to deviate from that presumption here. We acknowledge that Question 1 on the verdict form asked the jury to consider only the discrete question of whether the parties entered into an express agreement for the payment of *deferred* salary, as opposed to whether they entered into *any* agreement concerning salary. But as the district court noted, that was the specific question before the jury concerning Count I of Barfield's complaint—if there was no agreement as to deferred salary, he was not entitled to damages for breach of contract, regardless of whether there was an otherwise valid contract for the payment of salary.

Having answered that question in the negative, the jury was properly instructed to move on to Question 4, which concerned Barfield's claim for unjust enrichment, and the jury was correctly instructed that they must find in APRO's favor if they found "an express contract regarding salary." APRO's assertion that Question 1's particular focus on the discrete question of deferred salary led the jury to misunderstand the specific instructions it received concerning unjust enrichment is speculative. Such speculation is insufficient to overcome the presumption that the jury followed its instructions.

12

Accordingly, we conclude the jury instructions and verdict form accurately reflected the law, and "were sufficient so that the jurors understood the issues and were not misled." *See McNely*, 99 F.3d at 1072.

## III.  CONCLUSION

Based on the forgoing, we affirm the jury's verdict awarding Barfield damages for unjust enrichment.

**AFFIRMED.**